1  **KRONENBERGER ROSENFELD, LLP**
2  Karl S. Kronenberger (Bar No. 226112)
   karl@kr.law
3  Jeffrey M. Rosenfeld (Bar No. 222187)
   jeff@kr.law
4  150 Post Street, Suite 520
5  San Francisco, CA 94108
   Telephone: (415) 955-1155
6  Facsimile: (415) 955-1158
7
8  Attorneys for Plaintiff Pan Digital
   Network Limited
9

10

11          **UNITED STATES DISTRICT COURT**
12          **CENTRAL DISTRICT OF CALIFORNIA**
                 **WESTERN DIVISION**
13

14  **PAN DIGITAL NETWORK LIMITED,**      Case No. 2:23-cv-00584
    a United Kingdom limited company,
15
16          Plaintiff,                    **COMPLAINT**

17          v.                            **DEMAND FOR JURY TRIAL**
18
19  **2069913 ONTARIO LIMITED,** an
    Ontario, Canada business
20  corporation, **CHRISTOPHER
    FAGON,** an individual, **ANDREW
21  BURROWS-TROTMAN,** an
    individual, **CRISTAUDO HOLDINGS
22  LLC,** a New York limited liability
    company, **FRANK CRISTAUDO,** an
23  individual, and **JOHN DOES 1-10,**
24
25          Defendants.
26

27

28

Plaintiff, Pan Digital Network Limited, by and through its undersigned counsel, alleges as follows.

## INTRODUCTION

1.    Plaintiff Pan Digital Network Limited assists clients in finding credit/debit card processing solutions.

2.    Many of Plaintiff's clients operate in high-risk industries in which it is often difficult to find credit/debit card processing solutions.

3.    Plaintiff functions as an intermediary between its merchant clients and banks that have agreements with credit card issuers, and which are willing to work with merchants in high-risk industries.

4.    Plaintiff connects its clients with payment service providers, which in turn have relationships with banks. Bona fide payment service providers are designated by banks to solicit credit/debit card processing customers and to assist those customers in transmitting credit/debit card transaction data to the banks.

5.    In July 2022, Plaintiff entered into a written contract with payment service provider Defendant 2069913 Ontario Limited *dba* AzulPay ("AzulPay"). AzulPay agreed to provide credit/debit card processing services to Plaintiff.

6.    Pursuant to the contract, Plaintiff submitted credit/debit card transactions to AzulPay, and AzulPay was supposed to submit those transactions to one or more banks. In turn, the banks were supposed to settle the credit card transactions and send the funds to AzulPay. AzulPay was then supposed to send the funds—less AzulPay's commission—to Plaintiff.

7.    Unfortunately, AzulPay was part of a conspiracy to defraud Plaintiff and others and to steal their money.

8.    After making some initial payments to Plaintiff and encouraging Plaintiff to send a greater volume of credit/debit card transactions to AzulPay,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  AzulPay stopped making payments to Plaintiff altogether while owing Plaintiff
2  over a million dollars in settled credit/debit card transactions.

3      9.    Shortly after AzulPay stopped making payments, AzulPay
4  stopped responding to Plaintiff's communications, and its website
5  disappeared.

6      10.   Defendant Christopher Fagon ("Fagon") served as the hub of the
7  conspiracy to defraud and to steal from Plaintiff. The remaining Defendants
8  provided essential support for Fagon's scheme.

9      11.   This is not the first time Fagon has been involved in money
10 transmission crimes. In May 2016, Christopher Fagon pled guilty to the federal
11 crimes of laundering monetary instruments and operating an unlicensed
12 money transmitting business.

13                        **JURISDICTION & VENUE**

14     12.   This Court has subject matter jurisdiction under 28 U.S.C. §1331
15 over Plaintiff's claims arising under the laws of the United States. This Court
16 has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C.
17 §1367 because those claims are so related to Plaintiff's federal claims that
18 they form part of the same case or controversy under Article III of the United
19 States Constitution.

20     13.   This Court is a proper venue under 28 U.S.C. §1391 because a
21 substantial part of the events that gave rise to Plaintiff's claims occurred in
22 this judicial district.

23     14.   On information and belief, this Court has personal jurisdiction over
24 Defendant 2069913 Ontario Limited because its principal place of business is
25 in California.

26     15.   On information and belief, this Court has personal jurisdiction over
27 Defendants Christopher Fagon and Andrews Burrows-Trotman because they
28 reside in California.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

16.  On information and belief, this Court has personal jurisdiction over Defendants Cristaudo Holdings LLC and Frank Cristaudo under 28 U.S.C. §1965(b) because: a) Plaintiff has alleged a multi-district conspiracy that includes these Defendants, b) this Court has personal jurisdiction over other Defendants who were participants in the conspiracy, and c) no other district court would have personal jurisdiction over all of the alleged co-conspirators.

## PARTIES

17.  Plaintiff Pan Digital Network Limited is a United Kingdom limited company with its principal place of business in the United Kingdom.

18.  On information and belief, Defendant 2069913 Ontario Limited *dba* AzulPay is an Ontario, Canada business corporation with its principal place of business in California.

19.  On information and belief, Defendant Christopher Fagon is an individual residing in Los Angeles, California.

20.  On information and belief, Defendant Andrews Burrows-Trotman is an individual residing in Los Angeles, California.

21.  On information and belief, Defendant Cristaudo Holdings LLC is a New York limited liability company with its principal place of business in New York City, New York.

22.  On information and belief, Defendant Frank Cristaudo is an individual residing in New York City, New York.

23.  On information and belief, Defendants John Does 1–10, inclusive, are responsible in some capacity for the matters alleged in this Complaint. Plaintiff does not know the true names and capacities of Defendants sued herein as John Does 1–10, inclusive, and therefore identifies these Defendants by fictitious names. On information and belief, all Defendants transact business and/or reside in this judicial district and/or have sufficient contacts with this district to subject them to personal jurisdiction. Plaintiff will

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   amend this Complaint to identify the true names and capacities of John Does

2   1–10 when they are ascertained.

3   24.   On information and belief, one or more of Defendants John Does

4   1–10 was an employee, agent, or representative of the other Defendants, and

5   was with respect to all matters referred to herein, acting within the purpose

6   and scope of such employment, agency, or representation. On information

7   and belief, each Defendant has ratified and/or approved each of the acts and

8   omissions alleged herein.

9                           **FACTUAL ALLEGATIONS**

10   **A.   Credit/Debit Card Processing and Plaintiff's Business**

11   25.   The process of paying by a credit or debit card involves multiple

12   steps and multiple actors.

13   26.   First, the cardholder presents their credit/debit card to a merchant

14   in exchange for goods or services. The presentment may occur at a credit

15   card terminal in a brick-and-mortar store, on an e-commerce website, or in a

16   mobile application.

17   27.   Information regarding the proposed credit/debit card transaction

18   is instantaneously communicated to the bank that issued the credit/debit card

19   to the cardholder (i.e., the card-issuing bank). Once the card-issuing bank

20   approves the transaction, the transaction data is recorded by the merchant.

21   28.   For payment of a credit/debit card transaction (i.e., settlement),

22   the merchant sends the authorized transaction data to a bank that has a

23   relationship with the credit/debit card associations, like Visa and Mastercard.

24   This bank is often referred to as the "acquiring bank." Typically, the

25   transaction data is sent to the acquiring bank in batches.

26   29.   The acquiring bank sends the transaction data to the relevant card

27   association (i.e., Visa transactions are separated out and sent to Visa). The

28   card association then sends the transaction data to the relevant card-issuing

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1   bank. The card-issuing bank charges the cardholder's account for the amount
2   of the transaction and transfers the funds to the acquiring bank, less
3   interchange fees.

4       30.   The acquiring bank then deposits the funds in the merchant's
5   account less any fees.

6       31.   Acquiring banks may contract with various types of service
7   providers to assist in this process.

8       32.   For example, a Merchant Service Provider ("MSP") or
9   Independent Sales Organization ("ISO") (collectively, a "Payment Service
10  Provider" or "PSP") is an entity that provides credit/debit card services to
11  merchants based on an agreement between the PSP and an acquiring bank.
12  A PSP's services may include merchant solicitation, point-of-transaction
13  acceptance device installation and service, and transaction receipt data
14  capture and transmission.

15      33.   Under the card association rules, PSPs are prohibited from: a)
16  contracting directly with the merchant without the acquiring bank as a party to
17  the contract, b) accessing the merchant's funds, even when they provide
18  technological assistance with the transfer of approved transactions, and c)
19  subcontracting their responsibilities to other entities.

20      34.   Plaintiff assists merchants that operate in high-risk industries with
21  finding credit/debit card processing solutions.

22      35.   Specifically, Plaintiff assists its clients by connecting them with
23  PSPs that have contracted with banks that are willing to accept credit/debit
24  card transactions from merchants operating in high-risk industries.

25      36.   In turn, the PSPs help form relationships between Plaintiff's clients
26  and one or more acquiring banks.

27      37.   In exchange, both the PSP and Plaintiff receive a commission
28  paid by Plaintiff's clients.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**B.      Fagon's Criminal History**

38.     On November 13, 2014, Defendant Christopher Fagon was indicted with multiple counts of federal money laundering.

39.     The U.S. Attorney alleged that Fagon was part of a money laundering conspiracy, in which he conspired to transport, transmit, and transfer money derived from the sale of controlled substances.

40.     More specifically, the U.S. Attorney alleged that Fagon served as a courier who picked up and delivered bulk U.S. currency and facilitated the transfer of this money to drug traffickers in Mexico.

41.     The U.S. Attorney alleged that Fagon and his co-conspirators used coded language to effectuate the money laundering.

42.     On May 24, 2016, Fagon pled guilty to the laundering of monetary instruments/engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §1956(h) and operating an unlicensed money transmitting business in violation of 18 U.S.C. §1960.

**C.      Defendants' Conspiracy**

43.     On information and belief, Defendant Fagon came up with a plan to defraud merchants and merchant service providers.

44.     On information and belief, Fagon was at the center of the scheme and engaged the other Defendants to help with different aspects of the scheme.

45.     On information and belief, the other Defendants agreed to participate in Fagon's plan and helped carry it out.

46.     On information and belief, Defendants sought to gain the trust of merchants and merchant service providers by marketing AzulPay as a legitimate PSP that could assist merchants in high-risk industries.

47.     In fact, AzulPay was not a registered PSP with Visa or Mastercard; such status would have required a vetting process and acquiring

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  bank sponsorship.

2  48.    On information and belief, Defendants created a fully-interactive

3  website for AzulPay and used that website to market AzulPay to merchants

4  and merchant service providers (collectively, "AzulPay's Merchant Clients").

5  49.    Specifically, on April 22, 2022, one or more Defendants registered

6  the domain name <azulpay.co>. Shortly thereafter, one or more Defendants

7  created a fully-interactive website located at <azulpay.co> (the "AzulPay

8  Website").

9  50.    The AzulPay Website advertised that AzulPay provided

10  credit/debit card processing services.

11  51.    On information and belief, Defendants agreed and planned to use

12  the AzulPay Website to lure AzulPay's Merchant Clients into entering a

13  merchant-processing agreement with AzulPay.

14  52.    On information and belief, Defendant Andrew Burrows-Trotman

15  oversaw the day-to-day activities of AzulPay, acting behind the scenes as

16  AzulPay's Chief Executive Officer.

17  53.    On information and belief, Defendants agreed and planned to

18  initially process transactions for AzulPay's Merchant Clients.

19  54.    Because AzulPay was not a registered PSP and had no

20  relationship with an acquiring bank, on information and belief, Defendants

21  opened merchant accounts in certain Defendants' names, namely Cristaudo

22  Holdings LLC and John Does 6-10.

23  55.    On information and belief, Defendant Frank Cristaudo worked

24  with the other Defendants to open one or more merchant accounts with

25  acquiring banks in the name of Cristaudo Holdings LLC.

26  56.    On information and belief, Cristaudo Holdings LLC is not a

27  merchant that accepts credit/debit card payments, and it is not a registered

28  PSP.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

57.     On information and belief, Defendants submitted credit/debit card transactions from AzulPay's Merchant Clients to acquiring banks while falsely representing to the acquiring banks that the transactions were those of Cristaudo Holdings LLC and John Does 6-10 instead of those of AzulPay's Merchant Clients. Thus, when the acquiring banks paid out the settled funds, the banks paid the funds to Cristaudo Holdings LLC and John Does 6-10 (and not to AzulPay's Merchant Clients).

58.     Initially, Defendants paid the settled credit/debit card funds to AzulPay's Merchant Clients.

59.     On information and belief, Defendants agreed and planned that once AzulPay had established the trust of AzulPay's Merchant Clients, Defendants would encourage AzulPay's Merchant Clients to increase their volume of credit/debit card transactions.

60.     On information and belief, Defendants further agreed and planned that when AzulPay's Merchant Clients increased their volume of transactions, Defendants would steal the settled funds and AzulPay would disappear.

**D.      Defendants' Defrauding of Plaintiff and Theft of Plaintiff's Money**

61.     On information and belief, in or around May 2022, Defendants Fagon, AzulPay, Burrows-Trotman, and John Does 1-5 began promoting AzulPay as a PSP for merchants in high-risk industries.

62.     On or around June 26, 2022, Plaintiff contacted AzulPay based on the recommendation of another PSP (i.e., Payzentric).

63.     In response, AzulPay, explained to Plaintiff that AzulPay was a PSP for multiple African banks, and that AzulPay could help process credit/debit card transactions for merchants in high-risk industries.

64.     On July 7, 2022, Plaintiff entered into a merchant processing agreement with AzulPay (the "Contract"). A copy of the Contract is attached hereto as **Exhibit A**.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    65.    The Contract provides,

2    "2069913 Ontario Inc. s [AzulPay] shall provide Credit Card

3    processing capabilities to the Client as well as other agreed to

4    services such as gateway services, chargeback management

5    and any other services deemed necessary for the successful

6    processing and operation of its online business."

7    66.    Exhibit A to the Contract sets forth the "Settlement Schedule: T+7

8    Days."

9    67.    On information and belief, Defendants presented the Contract to

10   Plaintiff with the intent to defraud Plaintiff and to steal Plaintiff's money

11   according to the conspiracy described above. Specifically, Defendants

12   intended to lure Plaintiff into signing the Contract, then to begin processing

13   transactions for Plaintiff, then to encourage Plaintiff to send a greater volume

14   of transactions to AzulPay, and then to steal Plaintiff's money.

15   68.    After signing the Contract and creating an account through the

16   AzulPay Website, Plaintiff began submitting credit/debit card transactions to

17   AzulPay for processing and settlement.

18   69.    At first, Plaintiff received the funds for the settled transactions

19   pursuant to the Contract, though sometimes with minor delays.

20   70.    However, the settled funds were often transferred to Plaintiff either

21   through untraceable cryptocurrency or from parties other than AzulPay.

22   71.    As an example, on July 18, 2022, Defendant Cristaudo Holdings

23   LLC transferred £19,373.24 to Plaintiff's client.

24   72.    As another example, on August 3, 2022, Defendant Cristaudo

25   Holdings LLC transferred £79,597.95 to Plaintiff's client.

26   73.    As another example, on August 8, 2022, Defendant Cristaudo

27   Holdings LLC transferred £31,512.32 to Plaintiff's client.

28   74.    As another example, on August 10, 2022, Defendant Cristaudo

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   Holdings LLC transferred £15,383.76 to Plaintiff's client.

2       75.     On information and belief, Defendant Frank Cristaudo initiated

3   these transfers pursuant to directions received from Fagon.

4       76.     There would have been no reason for Cristaudo Holdings LLC or

5   Frank Cristaudo to transfer money to Plaintiff or Plaintiff's clients except in

6   furtherance of their relationship with AzulPay and Fagon and as part of a

7   conspiracy to defraud and to steal from Plaintiff.

8       77.     By early October 2022, the short delays in AzulPay's settlement

9   become longer.

10      78.     By late October 2022, Plaintiff stopped receiving payments from

11  AzulPay (or other entities on behalf of AzulPay) altogether.

12      79.     On November 7, 2022, AzulPay sent a letter to Plaintiff, ostensibly

13  from a "Taylor Givins," stating:

14          "We wanted to take the time to explain the problems we've

15          encountered with respect to the settlements that have not been

16          paid out to you as yet.

17

18          For your processing in September and October we had two

19          banks in Africa that held the funds due to fines levied on their

20          bank both from Visa and MasterCard. This is not necessarily

21          reflective of your volume or MIDS but it's cumulative to the BIN

22          that you were in. Unfortunately, African banks are notoriously

23          slow in fixing these issues and so we have not received your

24          funds as yet.

25

26          The banks in question are GT Bank and Wema. We pledged to

27          start trying to settle out of our own commissions last month and

28          then we had funds held at FTX resulting in our inability to send

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1    funds to several of our merchants, agents and partners.

2

3    Because of these obstacles, we've pledged to start settling you

4    as of December 9th - December 13th. Starting with your most

5    recent processing of approx $45K. The week of December 9th we

6    will start looking at a schedule that makes sense and can be

7    adhered to in order to settle remaining funds.

8

9    Looking forward to working with you to settle in full and hopefully

10   resume business in the near future."

11   80.   This letter was false. GT Bank in Nigeria continued processing

12   payments for Plaintiff through a different PSP during this same time period

13   and afterward.

14   81.   On information and belief, Taylor Givins is a fictitious person, and

15   no such person works for or represents AzulPay.

16   82.   Plaintiff never received any further payments or communications

17   from AzulPay.

18   83.   When Plaintiff sought to contact AzulPay, it received no response.

19   84.   By January 1, 2023, the AzulPay Website was gone.

20   85.   In total, Defendants stole and failed to pay Plaintiff $1,127,899.91

21   in settled credit/debit card funds.

22                    **FIRST CLAIM FOR RELIEF**

23   **(Violation of the Racketeer Influenced and Corrupt Organizations Act**

24              **("RICO") 18 U.S.C. §§1961, *et seq.*)**

25                    **(Against All Defendants)**

26   86.   Plaintiff repeats and incorporates by reference the allegations

27   contained in the preceding paragraphs.

28   87.   Defendants are "persons" within the meaning of 18 U.S.C.

1  §1961(3).

2      88.   On information and belief, Defendants formed an association-in-
3  fact enterprise. Specifically, on information and belief, Defendants formed an
4  enterprise when they created a framework to carry out their common
5  purpose of defrauding AzulPay's Merchants Clients and stealing their
6  money.

7      89.   On information and belief, Defendants' enterprise was structured
8  as follows: Defendant Fagon created the business entity AzulPay and came
9  up with the plan to defraud AzulPay's Merchant Clients. Fagon enlisted
10 Defendants Burrows-Trotman and John Does 1-5 to help operate AzulPay,
11 including by falsely marketing AzulPay as a bona fide PSP for AzulPay's
12 Merchant Clients. Fagon enlisted Defendants Frank Cristaudo, Cristaudo
13 Holdings LLC, and John Does 6-10 to open merchant accounts with
14 acquiring banks and to receive and pay out settled funds according to
15 Fagon's scheme.

16     90.   On information and belief, Defendants perpetrated their activities
17 in furtherance of the conspiracy as a single unit.

18     91.   Each Defendant's coordinated activities were necessary to
19 successfully complete the fraudulent scheme and to steal money from
20 Plaintiff and other AzulPay Merchant Clients.

21     92.   Defendants and Defendants' enterprise engaged in racketeering
22 activity in the form of wire fraud in violation of 18 U.S.C. §1343 by: a) forming
23 a scheme to defraud, b) using the wires in furtherance of that scheme, and
24 c) with the specific intent to defraud. Specifically, Defendants made false
25 misrepresentations by electronic communications to Plaintiff and other
26 AzulPay Merchant Clients, namely that AzulPay would provide credit/debit
27 card processing services and remit settled funds to Plaintiff and other
28 AzulPay Merchant Clients, such as Fix Idea Ltd *dba* PayAdmit ("PayAdmit").

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   Defendants' fraudulent statements were material and induced reliance by

2   Plaintiff and other AzulPay Merchant Clients, such as PayAdmit.

3       93.   Defendants and Defendants' enterprise engaged in racketeering

4   activity in the form of financial institution fraud in violation of 18 U.S.C. §1344

5   by obtaining money under the custody or control of a financial institution by

6   means of false representations. Specifically, Defendants submitted

7   credit/debit card transactions to acquiring banks (e.g., Guaranty Trust Bank

8   Limited) while falsely representing that the transactions were those of

9   Defendants rather than those of Plaintiff and AzulPay's other Merchant

10  Clients, and that Defendants were entitled to the settled funds.

11      94.   Defendants and Defendants' enterprise engaged in racketeering

12  activity in the form of operating an unlicensed money transmission business

13  in violation of 18 U.S.C. §1960. Specifically, Defendants were involved in the

14  transportation and transmission of funds that they knew had been derived

15  from a criminal offense.

16      95.   Defendants AzulPay and Fagon engaged in at least two

17  predicate acts in support of the enterprise's racketeering activity when they

18  fraudulently induced Plaintiff and PayAdmit into entering into a merchant

19  processing agreement with AzulPay with the intent to steal their money.

20      96.   Defendants Burrows-Trotman and John Does 1-5 engaged in at

21  least two predicate acts in support of the enterprise's racketeering activity

22  when they operated AzulPay, including AzulPay's fraudulent AzulPay

23  Website and the transmission of AzulPay Merchant Clients' transaction data

24  to acquiring banks, with the intent to steal money (including the data of

25  Plaintiff and PayAdmit). The conduct of Burrows-Trotman and John Does 1-

26  5 induced Plaintiff and PayAdmit to enter into a merchant processing

27  agreement with AzulPay and to continue processing with AzulPay.

28      97.   Defendants Frank Cristaudo, Cristaudo Holdings LLC, and John

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Does 6-10 engaged in at least two predicate acts in support of the enterprise's racketeering activity when they: a) submitted or caused to be submitted Plaintiff's transaction data to acquiring banks on at least two occasions in their own names rather than Plaintiff's name, b) when they received Plaintiff's settled funds from acquiring banks, and c) when they made or caused to be made at least two payments to Plaintiff's client pursuant to the Contract even though they had no relationship with Plaintiff or Plaintiff's client and were not parties to the Contract.

98.   On information and belief, in engaging in this activity, each Defendant knowingly implemented the decisions of Fagon to defraud and to steal from Plaintiff and other AzulPay Merchant Clients, and each Defendant was indispensable to the achievement of the enterprise's goal.

99.   Defendants' enterprise lasted from at least April 2022 through November 2022.

100. As a result of Defendants' racketeering activity, Plaintiff has suffered an injury to its business and property.

**SECOND CLAIM FOR RELIEF**

**(Fraudulent Inducement, Conspiracy to Commit Fraudulent Inducement, and Aiding and Abetting Fraudulent Inducement)**

**(Against All Defendants)**

101. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs.

102. On July 7, 2022, and on multiple occasions before then, AzulPay and Fagon represented that AzulPay would provide debit/credit card processing services to Plaintiff and send the settled funds to Plaintiff.

103. The representations of AzulPay and Fagon were false, in that Defendants intended to steal Plaintiff's settled funds.

104. AzulPay and Fagon knew their representations were false when

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1  they made them because they intended to steal Plaintiff's settled funds at

2  the time they made the representations.

3      105.  Plaintiff relied on the representations of AzulPay and Fagon that

4  AzulPay would process Plaintiff's credit/debit card transactions and send

5  Plaintiff the settled funds. Plaintiff's reliance was reasonable given that

6  AzulPay acted like other reputable PSPs, AzulPay initially provided Plaintiff

7  with the settled funds, and other participants in the payment processing

8  industry recommended AzulPay.

9      106. As a result of Plaintiff's reliance on AzulPay and Fagon's

10  misrepresentations, Plaintiff entered into the Contract.

11      107. As a result of Plaintiff's reliance on AzulPay and Fagon's

12  misrepresentations, Plaintiff was damaged.

13      108. **(Aiding and Abetting Fraudulent Inducement):** Defendants

14  Burrows-Trotman, Frank Cristaudo, Cristaudo Holdings LLC, and John Does

15  1-10 aided and abetted AzulPay and Fagon in fraudulently inducing Plaintiff

16  to enter the Contract.

17      109.  On information and belief, Defendants Burrows-Trotman, Frank

18  Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 knew that AzulPay

19  and Fagon intended for Fagon and AzulPay to make the above-described

20  false representation to Plaintiff and other AzulPay Merchant Clients to induce

21  them into entering a debit/credit card processing relationship.

22      110.  On information and belief, Defendants Burrows-Trotman, Frank

23  Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 gave substantial

24  assistance to Fagon and AzulPay in perpetrating a scheme to defraud

25  Plaintiff and other AzulPay Merchant Clients.

26      111.  The conduct of Defendants Burrows-Trotman, Frank Cristaudo,

27  Cristaudo Holdings LLC, and John Does 1-10 was a substantial factor in

28  causing harm to Plaintiff and a but-for and proximate cause of Plaintiff's

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   injuries.

2   112.  On information and belief, Defendants Burrows-Trotman, Frank
3   Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 had the specific
4   intent and consciously decided to facilitate the wrongful conduct of AzulPay
5   and Fagon, including their false representations to Plaintiff.

6   113. Even  if  Defendants  Burrows-Trotman,  Frank  Cristaudo,
7   Cristaudo Holdings LLC, and John Does 1-10 did not have knowledge of
8   AzulPay and Fagon's wrongful conduct, they are separately responsible for
9   and liable for the fraudulent inducement as aider and abettors because they
10  gave AzulPay and Fagon substantial assistance in achieving the tortious
11  result and their own conduct, separately considered, constitutes a breach of
12  duty to Plaintiff.

13  114. **(Conspiracy to Commit Fraudulent Inducement):**  On
14  information and belief, each Defendant was part of a conspiracy to
15  fraudulently induce Plaintiff and other AzulPay Merchant Clients to enter into
16  a debit/credit card processing relationship with AzulPay.

17  115. On information and belief, the conspiracy was in existence at
18  least as of April 2022 when AzulPay acquired the <azulpay.co> domain
19  name. On information and belief, each Defendant had joined the conspiracy
20  as of that date.

21  116.  On information and belief, the conspiracy operated at a high level
22  as follows: Defendant Fagon created the business entity AzulPay and came
23  up with the plan to defraud AzulPay's Merchant Clients. Fagon enlisted
24  Defendants Burrows-Trotman and John Does 1-5 to help operate AzulPay,
25  including by falsely marketing AzulPay as a bona fide PSP for AzulPay's
26  Merchant Clients. Fagon enlisted Defendants Frank Cristaudo, Cristaudo
27  Holdings LLC, and John Does 6-10 to open merchant accounts with
28  acquiring banks and to receive and pay out settled funds according to

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   Fagon's scheme. When AzulPay had developed trust with its AzulPay
2   Merchant Clients, it stopped sending the settled funds to those AzulPay
3   Merchant Clients, and Defendants retained the funds for themselves.

4   117.  Defendants achieved the goal of the conspiracy of inducing
5   Plaintiff to enter the Contract and stealing Plaintiff's funds.

6   118.  Plaintiff was damaged as a result of the conspiratorial conduct of
7   Defendants.

8   **THIRD CLAIM FOR RELIEF**

9   **(Fraud, Conspiracy to Commit Fraud, & Aiding and Abetting Fraud)**
10  **(Against All Defendants)**

11  119.  Plaintiff repeats and incorporates by reference the allegations
12  contained in the preceding paragraphs.

13  120.  On July 7, 2022, and on multiple occasions before then, AzulPay
14  and Fagon represented that AzulPay would provide debit/credit card
15  processing services to Plaintiff and send Plaintiff the settled funds.

16  121.  The representations of AzulPay and Fagon were false in that
17  Defendants intended to steal Plaintiff's settled funds.

18  122.  AzulPay and Fagon knew their representations were false when
19  they made them because they intended to steal Plaintiff's settled funds at
20  the time they made the representations.

21  123.  Plaintiff relied on the representations of AzulPay and Fagon that
22  AzulPay would process Plaintiff's credit/debit card transactions and send
23  Plaintiff the settled funds. Plaintiff's reliance was reasonable given that
24  AzulPay acted similarly to other reputable PSPs, AzulPay initially provided
25  Plaintiff with settled funds, and other participants in the payment processing
26  industry recommended AzulPay.

27  124.  As a result of AzulPay and Fagon's misrepresentations, Plaintiff
28  was damaged.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

125. **(Aiding and Abetting Fraud):** Defendants Burrows-Trotman, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 aided and abetted AzulPay and Fagon in their fraudulent representations to Plaintiff.

126. On information and belief, Defendants Burrows-Trotman, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 knew that AzulPay and Fagon intended to make the above-described false representations to Plaintiff and other AzulPay Merchant Clients.

127. Defendants Burrows-Trotman, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 gave substantial assistance to Fagon and AzulPay in perpetrating a scheme to defraud Plaintiff and other AzulPay Merchant Clients, including by falsely representing that AzulPay would provide credit/debit card processing services.

128. The conduct of Defendants Burrows-Trotman, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 was a substantial factor in causing harm to Plaintiff and a but-for and proximate cause of Plaintiff's injuries.

129. On information and belief, Defendants Burrows-Trotman, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 had the specific intent and consciously decided to facilitate the wrongful conduct of AzulPay and Fagon, including their false representations to Plaintiff.

130. Even if Defendants Burrows-Trotman, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 did not have knowledge of AzulPay and Fagon's wrongful conduct, they are separately responsible for and liable for the fraudulent inducement as aider and abettors because they gave AzulPay and Fagon substantial assistance in achieving the tortious result and their own conduct, separately considered, constitutes a breach of duty to Plaintiff.

131. **(Conspiracy to Commit Fraud):** On information and belief,

1   each Defendant was part of a conspiracy to defraud Plaintiff and other
2   AzulPay Merchant Clients.

3   132. On information and belief, the conspiracy was in existence at
4   least as of April 2022 when AzulPay acquired the <azulpay.co> domain
5   name. On information and belief, each Defendant had joined the conspiracy
6   as of that date.

7   133. On information and belief, the conspiracy operated at a high level
8   as follows: Defendant Fagon created the business entity AzulPay and came
9   up with the plan to defraud AzulPay's Merchant Clients. Fagon enlisted
10  Defendants Burrows-Trotman and John Does 1-5 to help operate AzulPay,
11  including by falsely marketing AzulPay as a bona fide PSP for AzulPay's
12  Merchant Clients. Fagon enlisted Defendants Frank Cristaudo, Cristaudo
13  Holdings LLC, and John Does 6-10 to open merchant accounts with
14  acquiring banks and to receive and pay out settled funds according to
15  Fagon's scheme. When AzulPay had developed trust with its AzulPay
16  Merchant Clients, it stopped sending the settled funds to those AzulPay
17  Merchant Clients and Defendants retained the funds for themselves.

18  134. Defendants achieved the goal of the conspiracy of defrauding
19  Plaintiff and stealing Plaintiff's funds.

20  135. Plaintiff was damaged as a result of the conspiratorial conduct of
21  Defendants.

22  **FOURTH CLAIM FOR RELIEF**

23  **(Conversion, Conspiracy to Commit Conversion, & Aiding and**

24  **Abetting Conversion)**

25  **(Against All Defendants)**

26  136. Plaintiff repeats and incorporates by reference the allegations
27  contained in the preceding paragraphs.

28  137. Plaintiff owns and has the right to possess $1,127,899.91.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

138.   Plaintiff is entitled to immediate possession of these funds.

139.   On information and belief, Defendants disposed of these funds in a manner inconsistent with Plaintiff's rights—i.e., Defendants stole the funds from Plaintiff.

140.   On information and belief, Defendants intended to dispose of Plaintiff's funds in a manner inconsistent with Plaintiff's rights.

141.   As a result of Defendants' conduct, Plaintiff has been damaged.

142.   **(Aiding and Abetting Conversion):** Defendants aided and abetted one another in the conversion of Plaintiff's funds.

143.   On information and belief, each Defendant intended to dispose of Plaintiff's funds in a manner inconsistent with Plaintiff's rights.

144.   Each Defendant gave substantial assistance to the other Defendants in perpetrating the scheme to steal Plaintiff's funds.

145.   Each Defendant's conduct was a substantial factor in causing harm to Plaintiff and a but-for and proximate cause of Plaintiff's injuries.

146.   On information and belief, each Defendant had the specific intent and consciously decided to facilitate the theft of Plaintiff's funds.

147.   Even if any Defendants did not have knowledge of the conversion of Plaintiff's funds, they are separately responsible for and liable for the conversion as aider and abettors because they gave the other Defendants substantial assistance in achieving the tortious result, and their own conduct, separately considered, constitutes a breach of a duty to Plaintiff.

148.   **(Conspiracy to Commit Conversion):** On information and belief, each Defendant was part of a conspiracy to steal the funds of Plaintiff and other AzulPay Merchant Clients.

149.   On information and belief, the conspiracy was in existence at least as of April 2022 when AzulPay acquired the <azulpay.co> domain

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   name. On information and belief, each Defendant had joined the conspiracy
2   as of that date.

3      150.   On information and belief, the conspiracy operated at a high level
4   as follows: Defendant Fagon created the business entity AzulPay and came
5   up with the plan to defraud AzulPay's Merchant Clients. Fagon enlisted
6   Defendants Burrows-Trotman and John Does 1-5 to help operate AzulPay,
7   including by falsely marketing AzulPay as a bona fide PSP for AzulPay's
8   Merchant Clients. Fagon enlisted Defendants Frank Cristaudo, Cristaudo
9   Holdings LLC, and John Does 6-10 to open merchant accounts with
10  acquiring banks and to receive and pay out settled funds according to
11  Fagon's scheme. When AzulPay had developed trust with its AzulPay
12  Merchant Clients, it stopped sending the settled funds to those AzulPay
13  Merchant Clients and Defendants retained the funds for themselves.

14     151.  Defendants achieved the goal of the conspiracy of stealing
15  Plaintiff's funds.

16     152.  Plaintiff was damaged as a result of the conspiratorial conduct of
17  Defendants in stealing Plaintiff's funds.

18               **FIFTH CLAIM FOR RELIEF**
19                 **(Breach of Contract)**
20                  **(Against AzulPay)**

21     153.  Plaintiff repeats and incorporates by reference the allegations
22  contained in the preceding paragraphs.

23     154.  On July 7, 2022, Plaintiff entered into a written Contract with
24  AzulPay.

25     155.  Under the Contract, AzulPay agreed to process credit/debit card
26  transactions for Plaintiff and to send Plaintiff the settled funds.

27     156.  Plaintiff performed under the Contract.

28     157.  AzulPay breached the Contract when it did not send settled funds

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    to Plaintiff.

2    158.  As a result of AzulPay's breaches, Plaintiff has been damaged,

3    including the loss of the settled funds to which Plaintiff is entitled.

**SIXTH CLAIM FOR RELIEF**

**(Intentional Interference with Contractual Relations, Aiding and**

**Abetting Intentional Interference with Contractual Relations, &**

**Conspiracy to Interfere with Contractual Relations)**

**(Against Defendants Fagon, Burrows-Trotman, Frank Cristaudo,**

**Cristaudo Holdings LLC, and John Does 1-10 )**

10   156.  Plaintiff repeats and incorporates by reference the allegations

11   contained in the preceding paragraphs.

12   157.  On July 7, 2022, Plaintiff entered into a written Contract with

13   AzulPay.

14   158.  On information and belief, Defendants Fagon, Burrows-Trotman,

15   Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 knew about

16   the Contract.

17   159.  On information and belief, Defendants Fagon, Burrows-Trotman,

18   Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 engaged in

19   intentional acts designed to induce a breach or disruption of the Contract.

20   160.  Specifically, on information and belief, Defendants Fagon,

21   Burrows-Trotman, Frank Cristaudo, Cristaudo Holdings LLC, and John Does

22   1-10 engaged in conduct to lure Plaintiff into entering into the Contract and

23   then to increase the volume of Plaintiff's credit/debit card transactions

24   submitted to AzulPay. Defendants then stole Plaintiff's settled funds, causing

25   AzulPay to breach the Contract.

26   161.  As a result of the conduct of Defendants Fagon, Burrows-

27   Trotman, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10,

28   AzulPay breached its Contract with Plaintiff by not paying Plaintiff the settled

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1 | funds.

2 | 162. As a result of AzulPay's breaches of the Contract, Plaintiff has
3 | been damaged, including the loss of the settled funds to which Plaintiff is
4 | entitled.

5 | 159. **(Aiding and Abetting Interference with Contractual**
6 | **Relations):** Defendants Fagon, Burrows-Trotman, Frank Cristaudo,
7 | Cristaudo Holdings LLC, and John Does 1-10 aided and abetted each other
8 | in their scheme to cause AzulPay to breach the Contract by not paying
9 | settled funds to Plaintiff.

10 | 160. On information and belief, Defendants Fagon, Burrows-Trotman,
11 | Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 intended to
12 | work with each other to steal money from Plaintiff and thereby cause AzulPay
13 | to breach the Contract.

14 | 161. Defendants Fagon, Burrows-Trotman, Frank Cristaudo,
15 | Cristaudo Holdings LLC, and John Does 1-10 gave substantial assistance to
16 | each other in perpetrating the scheme to steal Plaintiff's funds and thereby
17 | cause AzulPay to breach the Contract.

18 | 162. The conduct of Fagon, Burrows-Trotman, Frank Cristaudo,
19 | Cristaudo Holdings LLC, and John Does 1-10 was a substantial factor in
20 | causing harm to Plaintiff and a but-for and proximate cause of Plaintiff's
21 | injuries.

22 | 163. On information and belief, Defendants Fagon, Burrows-Trotman,
23 | Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 had the
24 | specific intent and consciously decided to steal Plaintiff's funds and thereby
25 | cause AzulPay to breach the Contract.

26 | 164. Even if Defendants Fagon, Burrows-Trotman, Frank Cristaudo,
27 | Cristaudo Holdings LLC, and John Does 1-10 did not have knowledge of the
28 | other Defendants' wrongful conduct, they are separately responsible for and

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  liable for the interference with the Contract as aider and abettors because
2  they gave each other substantial assistance in achieving the tortious result
3  and their own conduct, separately considered, constitutes a breach of duty
4  to Plaintiff.

5  165. **(Conspiracy to Interfere with Contractual Relations):** On
6  information and belief, Defendants Fagon, Burrows-Trotman, Frank
7  Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 were part of a
8  conspiracy to cause AzulPay to breach the Contract by not paying settled
9  funds to Plaintiff.

10  166. On information and belief, the conspiracy was in existence at
11  least as of April 2022 when AzulPay acquired the <azulpay.co> domain
12  name. On information and belief, each Defendant had joined the conspiracy
13  as of that date.

14  167. On information and belief, the conspiracy operated at a high level
15  as follows: Defendant Fagon created the business entity AzulPay and came
16  up with the plan to defraud AzulPay's Merchant Clients. Fagon enlisted
17  Defendants Burrows-Trotman and John Does 1-5 to help operate AzulPay,
18  including by falsely marketing AzulPay as a bona fide PSP for AzulPay's
19  Merchant Clients. Fagon enlisted Defendants Frank Cristaudo, Cristaudo
20  Holdings LLC, and John Does 6-10 to open merchant accounts with
21  acquiring banks and to receive and pay out settled funds according to
22  Fagon's scheme. When AzulPay had developed trust with its AzulPay
23  Merchant Clients, it stopped sending the settled funds to those AzulPay
24  Merchant Clients and Defendants retained the funds for themselves.

25  168. Defendants Fagon, Burrows-Trotman, Frank Cristaudo,
26  Cristaudo Holdings LLC, and John Does 1-10 achieved the goal of the
27  conspiracy of causing AzulPay to breach the Contract by not paying settled
28  funds to Plaintiff.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    169.  Plaintiff was damaged as a result of the conspiratorial conduct of

2  Defendants Fagon, Burrows-Trotman, Frank Cristaudo, Cristaudo Holdings

3  LLC, and John Does 1-10.

4                              **SEVENTH CLAIM FOR RELIEF**

5         **(Violation of California Penal Code §496, Aiding and Abetting**

6      **Violations of California Penal Code §496, & Conspiracy to Violate**

7                            **California Penal Code §496)**

8                                **(Against All Defendants)**

9    170.  Plaintiff repeats and incorporates by reference the allegations

10  contained in the preceding paragraphs.

11    171.  On information and belief, Defendants received Plaintiff's stolen

12  funds knowing the funds had been stolen in violation of California Penal

13  Code §496.

14    172.  As a result of Defendants' violation of California Penal Code

15  §496, Plaintiff has been harmed.

16    173.  **(Aiding and Abetting Violation of California Penal Code**

17  **§496):** Defendants aided and abetted each other in their scheme to steal

18  money from Plaintiff.

19    174.  On information and belief, Defendants intended to work with

20  each other to steal money from Plaintiff.

21    175.  Defendants gave substantial assistance to each other in

22  perpetrating the scheme to steal Plaintiff's funds.

23    176.  Defendants' conduct was a substantial factor in causing harm to

24  Plaintiff and a but-for and proximate cause of Plaintiff's injuries.

25    177.  On information and belief, Defendants had the specific intent and

26  consciously decided to facilitate the theft of Plaintiff's funds.

27    178. Even if any Defendant did not have knowledge of the other

28  Defendants' wrongful conduct, they are separately responsible for and liable

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1  for violations of California Penal Code §496 as aider and abettors because

2  they gave the other Defendants substantial assistance in achieving the

3  unlawful result, and their own conduct, separately considered, constitutes a

4  breach of duty to Plaintiff.

5      179.  **(Conspiracy to Violate California Penal Code §496):**

6  Defendants were part of a conspiracy to defraud Plaintiff and other AzulPay

7  Merchant Clients and to steal their money.

8      180.  On information and belief, the conspiracy was in existence at

9  least as of April 2022 when AzulPay acquired the <azulpay.co> domain

10  name. On information and belief, each Defendant had joined the conspiracy

11  as of that date.

12      181.  On information and belief, the conspiracy operated at a high level

13  as follows: Defendant Fagon created the business entity AzulPay and came

14  up with the plan to defraud AzulPay's Merchant Clients. Fagon enlisted

15  Defendants Burrows-Trotman and John Does 1-5 to help operate AzulPay,

16  including by falsely marketing AzulPay as a bona fide PSP for AzulPay's

17  Merchant Clients. Fagon enlisted Defendants Frank Cristaudo, Cristaudo

18  Holdings LLC, and John Does 6-10 to open merchant accounts with

19  acquiring banks and to receive and pay out settled funds according to

20  Fagon's scheme. When AzulPay had developed trust with its AzulPay

21  Merchant Clients, it stopped sending the settled funds to those AzulPay

22  Merchant Clients and Defendants retained the funds for themselves.

23      182.  Defendants achieved the goal of the conspiracy of stealing

24  Plaintiff's funds.

25      183.  Plaintiff was damaged as a result of Defendants' conspiratorial

26  conduct.

27  //

28                    **EIGHTH CLAIM FOR RELIEF**

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1 | **(Money Had and Received)**

2 | **(Against All Defendants)**

3 | 184.  Plaintiff repeats and incorporates by reference the allegations

4 | contained in the preceding paragraphs.

5 | 185.  Defendants received Plaintiff's stolen funds knowing the funds

6 | had been stolen in violation of California Penal Code §496.

7 | 186.  The money received by Defendants belonged to Plaintiff and was

8 | for Plaintiff's use.

9 | 187.  As a result of Defendants' conduct, Defendants are indebted to

10 | Plaintiff in the amount of $1,127,899.91.

11 | **NINTH CLAIM FOR RELIEF**

12 | **(False Advertising Under the Lanham Act, 15 U.S.C. §1125(a))**

13 | **(Against Defendant AzulPay)**

14 | 188.  Plaintiff repeats and incorporates by reference the allegations

15 | contained in the preceding paragraphs.

16 | 189.  While Plaintiff was AzulPay's client, Plaintiff and AzulPay also

17 | competed with each other in providing credit/debit card processing solutions

18 | to merchants in high-risk industries.

19 | 190.  AzulPay made false statements of fact in a commercial

20 | advertisement about its credit/debit card processing services. Specifically,

21 | AzulPay stated on its AzulPay Website that it provided legitimate credit/debit

22 | card processing services for its clients.

23 | 191.  AzulPay's statements on its AzulPay Website were literally false

24 | in that AzulPay did not provide legitimate credit/debit card processing

25 | services. Rather, AzulPay was part of a conspiracy to defraud AzulPay's

26 | Merchant Clients and to steal their money.

27 | 192.  AzulPay's statements on its AzulPay Website actually deceived

28 | Plaintiff and other credit/debit card service providers, including but not limited

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1 to PayAdmit.

2      193. AzulPay's statements on its AzulPay Website were material in

3 that they were likely to influence merchants and merchant service providers

4 into working with AzulPay.

5      194. AzulPay caused its false representations to enter into interstate

6 commerce by publishing them on the internet and then contracting with

7 AzulPay Merchant Clients throughout the world.

8      195. As a result of AzulPay's false advertisements, merchants

9 operating in high-risk industries chose to work with AzulPay rather than

10 Plaintiff as an entity that would connect merchants to PSPs.

11      196. As a result of AzulPay's false representations, Plaintiff was

12 harmed.

13 **PRAYER FOR RELIEF**

14      **WHEREFORE**, Plaintiff Pan Digital Network Limited respectfully

15 requests that the Court enter judgment in its favor and against all Defendants

16 and award the following relief to Plaintiff and against Defendants:

17      1. An award of damages to Plaintiff and against Defendant in an

18 amount to be proved at trial, comprising the following:

19           a. Compensatory damages under California law, including

20              California Civil Code §3281;

21           b. Punitive damages pursuant to California Civil Code §3294;

22           c. Restitution and/or other equitable relief, including without

23              limitation disgorgement of all revenues, profits, and unjust

24              enrichment that Defendants obtained from Plaintiff;

25           d. For damages of three times the damages Plaintiff has

26              sustained, plus the cost of this suit, including reasonable

27              attorneys' fees pursuant to 18 U.S.C. §1964(c) and (d);

28           e. Plaintiff's costs of suit;

f. Pre-judgment interest to the extent allowed by law; and

2. Such other and additional relief as the Court deems just and proper.

Respectfully Submitted,

DATED: January 25, 2023            **KRONENBERGER ROSENFELD, LLP**

By:  _____s/ Karl S. Kronenberger_____
                    Karl S. Kronenberger

Attorneys for Plaintiff Pan Digital Network Limited

**JURY TRIAL DEMANDED**

Plaintiff Pan Digital Network Limited Institute hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

DATED: January 25, 2023          **KRONENBERGER ROSENFELD, LLP**

By: _____ s/ Karl S. Kronenberger _____
          Karl S. Kronenberger

Attorneys for Plaintiff Pan Digital Network Limited

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108