**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
karl@kr.law
Jeffrey M. Rosenfeld (Bar No. 222187)
jeff@kr.law
Leah Rosa Vulić (Bar No. 343520)
leah@kr.law
548 Market Street, #85399
San Francisco, CA 94104
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

Attorneys for Plaintiff Pan Digital Network Limited

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

**PAN DIGITAL NETWORK LIMITED,** a United Kingdom limited company,

Plaintiff,

v.

**2069913 ONTARIO LIMITED,** an Ontario, Canada business corporation, **FRANK CRISTAUDO,** an individual, **CRISTAUDO HOLDINGS LLC,** a New York limited liability company, **MAXWELL DEAN MORGAN**, an individual, and **JOHN DOES 1-10,**

Defendants.

Case No. 2:23-cv-00584-SPG-MAA

**FIRST AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**



KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Plaintiff, Pan Digital Network Limited, by and through its undersigned counsel, alleges as follows.

## INTRODUCTION

1. Plaintiff Pan Digital Network Limited assists clients in finding credit/debit card processing solutions.

2. Many of Plaintiff's clients operate in high-risk industries in which it is often difficult to find credit/debit card processing solutions.

3. Plaintiff functions as an intermediary between its merchant clients and banks that have agreements with credit card issuers, and which are willing to work with merchants in high-risk industries.

4. Plaintiff connects its clients with payment service providers, which in turn have relationships with banks. Bona fide payment service providers are designated by banks to solicit credit/debit card processing customers and to assist those customers in transmitting credit/debit card transaction data to the banks.

5. In July 2022, Plaintiff entered into a written contract with payment service provider Defendant 2069913 Ontario Limited *dba* AzulPay ("AzulPay"). AzulPay agreed to provide credit/debit card processing services to Plaintiff.

6. Pursuant to the contract, Plaintiff submitted credit/debit card transactions to AzulPay, and AzulPay was supposed to submit those transactions to one or more banks. In turn, the banks were supposed to settle the credit card transactions and send the funds to AzulPay. AzulPay was then supposed to send the funds—less AzulPay's commission—to Plaintiff.

7. Unfortunately, AzulPay was part of a conspiracy to defraud Plaintiff and others and to steal their money.

8. After making some initial payments to Plaintiff and encouraging Plaintiff to send a greater volume of credit/debit card transactions to AzulPay,

AzulPay stopped making payments to Plaintiff altogether while owing Plaintiff over a million dollars in settled credit/debit card transactions.

9. Shortly after AzulPay stopped making payments, AzulPay stopped responding to Plaintiff's communications, and its website disappeared.

10. Defendant Frank Cristaudo served as the hub of the conspiracy to defraud and to steal from Plaintiff. The remaining Defendants provided essential support for Cristaudo's scheme.

## JURISDICTION & VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. §1331 over Plaintiff's claims arising under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. This Court is a proper venue under 28 U.S.C. §1391 because a substantial part of the events that gave rise to Plaintiff's claims occurred in this judicial district.

13. On information and belief, this Court has personal jurisdiction over Defendant 2069913 Ontario Limited because its principal place of business is in California.

14. On information and belief, this Court has personal jurisdiction over Defendants Cristaudo Holdings LLC, Frank Cristaudo, and Maxwell Dean Morgan under 28 U.S.C. §1965(b) because: a) Plaintiff has alleged a multi-district conspiracy that includes these Defendants, b) this Court has personal jurisdiction over another Defendant who was a participant in the conspiracy, and c) no other district court would have personal jurisdiction over all of the alleged co-conspirators.



KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

15. This Court also has personal jurisdiction over Maxwell Dean Morgan pursuant to the Payment Agreement dated March 7, 2023, and attached hereto as **Exhibit B (**the "Payment Agreement"), which provides:

> "This Agreement, in all respects, shall be interpreted, enforced, and governed by and under the laws of the State of California and the United States. The Parties agree that all disputes among them arising out of or related to this Agreement, including claims of breach of this Agreement, shall be resolved exclusively by state or federal courts located in California, and the Parties waive any objection that they may have to the location of the court considering the dispute, including but not limited to objections on the grounds of subject matter jurisdiction or personal jurisdiction."

## PARTIES

16. Plaintiff Pan Digital Network Limited is a United Kingdom limited company with its principal place of business in the United Kingdom.

17. On information and belief, Defendant 2069913 Ontario Limited *dba* AzulPay is an Ontario, Canada business corporation with its principal place of business in California.

18. On information and belief, Defendant Cristaudo Holdings LLC is a New York limited liability company with its principal place of business in New York City, New York.

19. On information and belief, Defendant Frank Cristaudo is an individual residing in New York City, New York.

20. On information and belief, Defendant Maxwell Dean Morgan is an individual residing in Ontario, Canada.

21. On information and belief, Defendants John Does 1–10, inclusive, are responsible in some capacity for the matters alleged in this Complaint.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Plaintiff does not know the true names and capacities of Defendants sued herein as John Does 1–10, inclusive, and therefore identifies these Defendants by fictitious names. On information and belief, all Defendants transact business and/or reside in this judicial district and/or have sufficient contacts with this district to subject them to personal jurisdiction. Plaintiff will amend this Complaint to identify the true names and capacities of John Does 1–10 when they are ascertained.

22. On information and belief, one or more of Defendants John Does 1–10 was an employee, agent, or representative of the other Defendants, and was with respect to all matters referred to herein, acting within the purpose and scope of such employment, agency, or representation. On information and belief, each Defendant has ratified and/or approved each of the acts and omissions alleged herein.

## FACTUAL ALLEGATIONS

### A. Credit/Debit Card Processing and Plaintiff's Business

23. The process of paying by a credit or debit card involves multiple steps and multiple actors.

24. First, the cardholder presents their credit/debit card to a merchant in exchange for goods or services. The presentment may occur at a credit card terminal in a brick-and-mortar store, on an e-commerce website, or in a mobile application.

25. Information regarding the proposed credit/debit card transaction is instantaneously communicated to the bank that issued the credit/debit card to the cardholder (i.e., the card-issuing bank). Once the card-issuing bank approves the transaction, the transaction data is recorded by the merchant.

26. For payment of a credit/debit card transaction (i.e., settlement), the merchant sends the authorized transaction data to a bank that has a relationship with the credit/debit card associations, like Visa and Mastercard.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

This bank is often referred to as the "acquiring bank." Typically, the transaction data is sent to the acquiring bank in batches.

27. The acquiring bank sends the transaction data to the relevant card association (i.e., Visa transactions are separated out and sent to Visa). The card association then sends the transaction data to the relevant card-issuing bank. The card-issuing bank charges the cardholder's account for the amount of the transaction and transfers the funds to the acquiring bank, less interchange fees.

28. The acquiring bank then deposits the funds in the merchant's account less any fees.

29. Acquiring banks may contract with various types of service providers to assist in this process.

30. For example, a Merchant Service Provider ("MSP") or Independent Sales Organization ("ISO") (collectively, a "Payment Service Provider" or "PSP") is an entity that provides credit/debit card services to merchants based on an agreement between the PSP and an acquiring bank. A PSP's services may include merchant solicitation, point-of-transaction acceptance device installation and service, and transaction receipt data capture and transmission.

31. Under the card association rules, PSPs are prohibited from: a) contracting directly with the merchant without the acquiring bank as a party to the contract, b) accessing the merchant's funds, even when they provide technological assistance with the transfer of approved transactions, and c) subcontracting their responsibilities to other entities.

32. Plaintiff assists merchants that operate in high-risk industries with finding credit/debit card processing solutions.

33. Specifically, Plaintiff assists its clients by connecting them with PSPs that have contracted with banks that are willing to accept credit/debit

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

card transactions from merchants operating in high-risk industries.

34. In turn, the PSPs help form relationships between Plaintiff's clients and one or more acquiring banks.

35. In exchange, both the PSP and Plaintiff receive a commission paid by Plaintiff's clients.

**B. Defendants' Conspiracy**

36. On information and belief, Defendant Frank Cristaudo came up with a plan to defraud merchants and merchant service providers.

37. On information and belief, Frank Cristaudo was at the center of the scheme and engaged the other Defendants to help with different aspects of the scheme.

38. On information and belief, Frank Cristaudo has engaged in similar schemes on multiple occasions.

39. On information and belief, the other Defendants agreed to participate in Frank Cristaudo's scheme and helped carry it out.

40. On information and belief, Defendants' scheme works as follows.

41. First, on information and belief, Defendants find an inactive company (owned by a third party), which they can use as the face of a credit card processing business (the "Hijacked Business").

42. Second, on information and belief, Defendants develop a website for the Hijacked Business to create the appearance that the Hijacked Business is a legitimate PSP.

43. Third, on information and belief, Defendants gain the trust of merchants and merchant service providers by marketing the Hijacked Business as a legitimate PSP that can assist merchants in high-risk industries.

44. Fourth, on information and belief, Defendants have the Hijacked Business enter into written contracts with merchants and merchant service providers ("Merchant Clients"). The Hijacked Business agrees to provide the

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Merchant Clients with credit/debit card processing services. Defendants forge the signature of an actual principal of the Hijacked Business.

45. Fifth, on information and belief, Defendants initially assist in processing credit/debit card transactions for Merchant Clients and remit the settled funds to the Merchant Client. As Defendants gain the trust of a Merchant Client, they encourage the Merchant Client to increase the volume of transactions it sends to the Hijacked Business.

46. Sixth, on information and belief, Defendants stop remitting the settled funds to their Merchant Clients, and steal the settled funds for themselves.

47. Finally, on information and belief, Defendants abandon the Hijacked Business, leaving the original principals of the Hijacked Business linked to Defendants' misconduct.

**C. Defendants' Defrauding of Plaintiff and Theft of Plaintiff's Money**

48. Defendants engaged in the above-described scheme to steal Plaintiff's money.

49. On information and belief, Defendant Morgan worked with Frank Cristaudo to find an inactive company that could be used to perpetrate the scam.

50. On information and belief, Morgan identified AzulPay to serve as a Hijacked Business. AzulPay had been formed by an acquaintance of Morgan's years earlier, but had not operated for some time. AzulPay was never a registered PSP with Visa or Mastercard; such status would have required a vetting process and acquiring bank sponsorship.

51. On information and belief, without the knowledge or consent of the actual principals of AzulPay, Defendants created a fully-interactive website for AzulPay. Specifically, on April 22, 2022, one or more Defendants registered the domain name <azulpay.co>. Shortly thereafter, one or more

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Defendants created a fully-interactive website located at <azulpay.co> (the "AzulPay Website"). Defendants used the AzulPay Website to market AzulPay to merchants and merchant service providers (collectively, "AzulPay's Merchant Clients").

52. On information and belief, Frank Cristaudo designed or oversaw the design of the AzulPay Website. On information and belief, Morgan and Does 1-5 assisted Cristaudo with the marketing of AzulPay.

53. On information and belief, Defendants agreed and planned to use the AzulPay Website to lure AzulPay's Merchant Clients into entering credit/debit card processing agreements with AzulPay.

54. On information and belief, Defendants agreed and planned to initially process transactions for AzulPay's Merchant Clients.

55. On information and belief, Defendants agreed and planned that once AzulPay had established the trust of AzulPay's Merchant Clients, Defendants would encourage AzulPay's Merchant Clients to increase their volume of credit/debit card transactions.

56. On or around June 26, 2022, Plaintiff contacted AzulPay based on the recommendation of another PSP (i.e., Payzentric).

57. In response, AzulPay, explained to Plaintiff that AzulPay was a PSP for multiple African banks, and that AzulPay could help process credit/debit card transactions for merchants in high-risk industries.

58. On information and belief, Frank Cristaudo was responsible for these communications, though he used pseudonyms to hide his identity.

59. On July 7, 2022, Plaintiff entered into a merchant processing agreement with AzulPay (the "Contract"). A copy of the Contract is attached hereto as **Exhibit A**.

60. The Contract provides,

"2069913 Ontario Inc. s [AzulPay] shall provide Credit Card

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

processing capabilities to the Client as well as other agreed to services such as gateway services, chargeback management and any other services deemed necessary for the successful processing and operation of its online business."

61. Exhibit A to the Contract sets forth the "Settlement Schedule: T+7 Days."

62. On information and belief, Frank Cristaudo presented the Contract to Plaintiff with the intent to defraud Plaintiff and to steal Plaintiff's money according to the conspiracy described above.

63. On information and belief, Frank Cristaudo forged the signature of Christopher Fagon on the Contract on behalf of AzulPay. Chistopher Fagon was a principal of AzulPay and had no knowledge of Frank Cristaudo's use of AzulPay to market credit/debit card processing services.

64. Because AzulPay was not a registered PSP and had no relationship with an acquiring bank, on information and belief, Defendants opened merchant accounts in certain Defendants' names, namely Cristaudo Holdings LLC and John Does 6-10.

65. On information and belief, Defendant Frank Cristaudo worked with the other Defendants to open one or more merchant accounts with acquiring banks in the name of Cristaudo Holdings LLC.

66. On information and belief, Cristaudo Holdings LLC is not a merchant that accepts credit/debit card payments, and it is not a registered PSP.

67. On information and belief, Defendants submitted credit/debit card transactions from AzulPay's Merchant Clients to acquiring banks while falsely representing to the acquiring banks that the transactions were those of Cristaudo Holdings LLC and John Does 6-10 instead of those of AzulPay's Merchant Clients. Thus, when the acquiring banks paid out the settled funds,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

the banks paid the funds to Cristaudo Holdings LLC and John Does 6-10 (and not to AzulPay's Merchant Clients).

68. After signing the Contract and creating an account through the AzulPay Website, Plaintiff began submitting credit/debit card transactions to AzulPay for processing and settlement.

69. At first, Plaintiff received the funds for the settled transactions pursuant to the Contract, though sometimes with minor delays.

70. However, the settled funds were often transferred to Plaintiff either through untraceable cryptocurrency or from parties other than AzulPay.

71. As an example, on July 18, 2022, Defendant Cristaudo Holdings LLC transferred £19,373.24 to Plaintiff's client.

72. As another example, on August 3, 2022, Defendant Cristaudo Holdings LLC transferred £79,597.95 to Plaintiff's client.

73. As another example, on August 8, 2022, Defendant Cristaudo Holdings LLC transferred £31,512.32 to Plaintiff's client.

74. As another example, on August 10, 2022, Defendant Cristaudo Holdings LLC transferred £15,383.76 to Plaintiff's client.

75. There would have been no reason for Cristaudo Holdings LLC or Frank Cristaudo to transfer money to Plaintiff or Plaintiff's clients except in furtherance of their relationship with AzulPay and as part of a conspiracy to defraud and to steal from Plaintiff.

76. By early October 2022, the short delays in AzulPay's settlement become longer.

77. By late October 2022, Plaintiff stopped receiving payments from AzulPay (or other entities on behalf of AzulPay) altogether.

78. On November 7, 2022, Frank Cristaudo (on behalf of AzulPay) sent a letter to Plaintiff, ostensibly from a "Taylor Givins," stating:

"We wanted to take the time to explain the problems we've

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

encountered with respect to the settlements that have not been paid out to you as yet.

For your processing in September and October we had two banks in Africa that held the funds due to fines levied on their bank both from Visa and MasterCard. This is not necessarily reflective of your volume or MIDS but it's cumulative to the BIN that you were in. Unfortunately, African banks are notoriously slow in fixing these issues and so we have not received your funds as yet.

The banks in question are GT Bank and Wema. We pledged to start trying to settle out of our own commissions last month and then we had funds held at FTX resulting in our inability to send funds to several of our merchants, agents and partners.

Because of these obstacles, we've pledged to start settling you as of December 9th - December 13th. Starting with your most recent processing of approx $45K. The week of December 9th we will start looking at a schedule that makes sense and can be adhered to in order to settle remaining funds.

Looking forward to working with you to settle in full and hopefully resume business in the near future."

79. This letter was false. GT Bank in Nigeria continued processing payments for Plaintiff through a different PSP during this same time period and afterward.

80. On information and belief, Taylor Givins is a fictitious person, and

no such person works for or represents AzulPay.

81. Plaintiff never received any further payments or communications from AzulPay.

82. When Plaintiff sought to contact AzulPay, it received no response.

83. By January 1, 2023, the AzulPay Website was gone.

84. In total, Defendants stole and failed to pay Plaintiff $1,127,899.91 in settled credit/debit card funds.

**D. Defendant Morgan's Payment Agreement**

85. After Plaintiff filed this suit, Plaintiff's counsel was directed to Defendant Morgan.

86. Morgan explained to Plaintiff's counsel that he was involved in the handling of Plaintiff's funds, and he blamed the failure to return the funds on difficulties with certain African banks.

87. On March 7, 2023, Plaintiff and Morgan executed a contract whereby Morgan agreed to re-pay the funds stolen from Plaintiff. A true and correct copy of the contract is attached hereto as **Exhibit B** (the Payment Agreement).

88. The Payment Agreement required Morgan to pay $1,127,889.91 to Plaintiff in six installments between March 24, 2023 and May 31, 2023.

89. Morgan failed to make any of the payments under the Payment Agreement.

**FIRST CLAIM FOR RELIEF**

**(Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §§1961, *et seq.*)**

**(Against All Defendants)**

90. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs.

91. Defendants are "persons" within the meaning of 18 U.S.C.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

§1961(3).

92. On information and belief, Defendants formed an association-in-fact enterprise. Specifically, on information and belief, Defendants formed an enterprise when they created a framework to carry out their common purpose of defrauding AzulPay's Merchants Clients and stealing their money.

93. On information and belief, Defendants' enterprise was structured as follows: Defendant Frank Cristaudo oversaw the scheme to defraud AzulPay's Merchant Clients. Frank Cristaudo enlisted Morgan to identify inactive businesses that Defendants could use to market their sham credit/debit card processing services. Frank Cristaudo, Morgan, and John Does 1-5 operated AzulPay as a supposedly legitimate PSP, including by falsely marketing AzulPay as a legitimate PSP for AzulPay's Merchant Clients. Frank Cristaudo enlisted Defendants Cristaudo Holdings LLC and John Does 6-10 to open merchant accounts with acquiring banks and to receive and pay out settled funds according to Cristaudo's scheme.

94. On information and belief, Defendants perpetrated their activities in furtherance of the conspiracy as a single unit.

95. Each Defendant's coordinated activities were necessary to successfully complete the fraudulent scheme and to steal money from Plaintiff and other AzulPay Merchant Clients.

96. Defendants and Defendants' enterprise engaged in racketeering activity in the form of wire fraud in violation of 18 U.S.C. §1343 by: a) forming a scheme to defraud, b) using the wires in furtherance of that scheme, and c) with the specific intent to defraud. Specifically, Defendants made false misrepresentations by electronic communications to Plaintiff and other AzulPay Merchant Clients, namely that AzulPay would provide credit/debit card processing services and remit settled funds to Plaintiff and other

AzulPay Merchant Clients, such as Zenium Consulting LTD ("Zenium") and and Fix Idea Ltd *dba* PayAdmit ("PayAdmit"). Defendants' fraudulent statements were material and induced reliance by Plaintiff and other AzulPay Merchant Clients, such as Zenium and PayAdmit.

97. Defendants and Defendants' enterprise engaged in racketeering activity in the form of financial institution fraud in violation of 18 U.S.C. §1344 by obtaining money under the custody or control of a financial institution by means of false representations. Specifically, Defendants submitted credit/debit card transactions to acquiring banks (e.g., Guaranty Trust Bank Limited) while falsely representing that the transactions were those of Defendants rather than those of Plaintiff and AzulPay's other Merchant Clients, and that Defendants were entitled to the settled funds.

98. Defendants and Defendants' enterprise engaged in racketeering activity in the form of operating an unlicensed money transmission business in violation of 18 U.S.C. §1960. Specifically, Defendants were involved in the transportation and transmission of funds that they knew had been derived from a criminal offense.

99. Defendants AzulPay and Frank Cristaudo engaged in at least two predicate acts in support of the enterprise's racketeering activity when they fraudulently induced Plaintiff, Zenium, and PayAdmit into entering into a merchant processing agreement with AzulPay with the intent to steal their money.

100. Defendants Morgan and John Does 1-5 engaged in at least two predicate acts in support of the enterprise's racketeering activity when they operated AzulPay, including AzulPay's fraudulent AzulPay Website and the transmission of AzulPay Merchant Clients' transaction data to acquiring banks, with the intent to steal money (including the data of Plaintiff, Zenium, and PayAdmit). The conduct of Morgan and John Does 1-5 induced Plaintiff,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Zenium, and PayAdmit to enter into merchant processing agreements with AzulPay and to continue processing with AzulPay.

101. Defendant Cristaudo Holdings LLC, and John Does 6-10 engaged in at least two predicate acts in support of the enterprise's racketeering activity when they: a) submitted or caused to be submitted Plaintiff's transaction data to acquiring banks on at least two occasions in their own names rather than Plaintiff's name, b) when they received Plaintiff's settled funds from acquiring banks, and c) when they made or caused to be made at least two payments to Plaintiff's client pursuant to the Contract even though they had no relationship with Plaintiff or Plaintiff's client and were not parties to the Contract.

102. On information and belief, in engaging in this activity, each Defendant knowingly implemented the decisions of Cristaudo to defraud and to steal from Plaintiff and other AzulPay Merchant Clients, and each Defendant was indispensable to the achievement of the enterprise's goal.

103. Defendants' enterprise lasted from at least April 2022 through November 2022.

104. As a result of Defendants' racketeering activity, Plaintiff has suffered an injury to its business and property.

## SECOND CLAIM FOR RELIEF

## (Fraudulent Inducement, Conspiracy to Commit Fraudulent Inducement, and Aiding and Abetting Fraudulent Inducement)

## (Against All Defendants)

105. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs.

106. On July 7, 2022, and on multiple occasions before then, AzulPay and Frank Cristaudo represented that AzulPay would provide debit/credit card processing services to Plaintiff and send the settled funds to Plaintiff.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

107. The representations of AzulPay and Frank Cristaudo were false, in that Defendants intended to steal Plaintiff's settled funds.

108. AzulPay and Frank Cristaudo knew their representations were false when they made them because they intended to steal Plaintiff's settled funds at the time they made the representations.

109. Plaintiff relied on the representations of AzulPay and Frank Cristaudo that AzulPay would process Plaintiff's credit/debit card transactions and send Plaintiff the settled funds. Plaintiff's reliance was reasonable given that AzulPay acted like other reputable PSPs, AzulPay initially provided Plaintiff with the settled funds, and other participants in the payment processing industry recommended AzulPay.

110. As a result of Plaintiff's reliance on AzulPay and Frank Cristaudo's misrepresentations, Plaintiff entered into the Contract.

111. As a result of Plaintiff's reliance on AzulPay and Frank Cristaudo's misrepresentations, Plaintiff was damaged.

112. **(Aiding and Abetting Fraudulent Inducement):** Defendants Morgan, Cristaudo Holdings LLC, and John Does 1-10 aided and abetted AzulPay and Frank Cristaudo in fraudulently inducing Plaintiff to enter the Contract.

113. On information and belief, Defendants Morgan, Cristaudo Holdings LLC, and John Does 1-10 knew that AzulPay and Frank Cristaudo intended to make the above-described false representation to Plaintiff and other AzulPay Merchant Clients to induce them into entering a debit/credit card processing relationship.

114. On information and belief, Defendants Morgan, Cristaudo Holdings LLC, and John Does 1-10 gave substantial assistance to Frank Cristaudo and AzulPay in perpetrating a scheme to defraud Plaintiff and other AzulPay Merchant Clients.

115. The conduct of Defendants Morgan, Cristaudo Holdings LLC, and John Does 1-10 was a substantial factor in causing harm to Plaintiff and a but-for and proximate cause of Plaintiff's injuries.

116. On information and belief, Defendants Morgan, Cristaudo Holdings LLC, and John Does 1-10 had the specific intent and consciously decided to facilitate the wrongful conduct of AzulPay and Frank Cristaudo, including their false representations to Plaintiff.

117. Even if Defendants Morgan, Cristaudo Holdings LLC, and John Does 1-10 did not have knowledge of AzulPay and Frank Cristaudo's wrongful conduct, they are separately responsible for and liable for the fraudulent inducement as aider and abettors because they gave AzulPay and Frank Cristaudo substantial assistance in achieving the tortious result and their own conduct, separately considered, constitutes a breach of duty to Plaintiff.

118. **(Conspiracy to Commit Fraudulent Inducement):** On information and belief, each Defendant was part of a conspiracy to fraudulently induce Plaintiff and other AzulPay Merchant Clients to enter into a debit/credit card processing relationship with AzulPay.

119. On information and belief, the conspiracy was in existence at least as of April 2022 when AzulPay acquired the <azulpay.co> domain name. On information and belief, each Defendant had joined the conspiracy as of that date.

120. On information and belief, the conspiracy operated at a high level as follows: Defendant Frank Cristaudo organized and oversaw the scam. Frank Cristaudo enlisted Morgan to identify AzulPay as an inactive business entity that could be hijacked for the purpose of fraudulently advertising credit/debit card processing business. Frank Cristaudo enlisted Defendants AzulPay, Morgan, and John Does 1-5 to help operate AzulPay, including by

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

falsely marketing AzulPay as a bona fide PSP for AzulPay's Merchant Clients. Frank Cristaudo enlisted Defendants Cristaudo Holdings LLC and John Does 6-10 to open merchant accounts with acquiring banks and to receive and pay out settled funds according to Cristaudo's scheme. When AzulPay had developed trust with its AzulPay Merchant Clients, Defendants stopped sending the settled funds to those AzulPay Merchant Clients, and Defendants retained the funds for themselves.

121. Defendants achieved the goal of the conspiracy of inducing Plaintiff to enter the Contract and stealing Plaintiff's funds.

122. Plaintiff was damaged as a result of the conspiratorial conduct of Defendants.

**THIRD CLAIM FOR RELIEF**

**(Fraud, Conspiracy to Commit Fraud, & Aiding and Abetting Fraud)**

**(Against All Defendants)**

123. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs.

124. On July 7, 2022, and on multiple occasions before then, AzulPay and Frank Cristaudo represented that AzulPay would provide debit/credit card processing services to Plaintiff and send Plaintiff the settled funds.

125. The representations of AzulPay and Frank Cristaudo were false in that Defendants intended to steal Plaintiff's settled funds.

126. AzulPay and Frank Cristaudo knew their representations were false when they made them because they intended to steal Plaintiff's settled funds at the time they made the representations.

127. Plaintiff relied on the representations of AzulPay and Frank Cristaudo that AzulPay would process Plaintiff's credit/debit card transactions and send Plaintiff the settled funds. Plaintiff's reliance was reasonable given that AzulPay acted similarly to other reputable PSPs,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

AzulPay initially provided Plaintiff with settled funds, and other participants in the payment processing industry recommended AzulPay.

128. As a result of AzulPay and Frank Cristaudo's misrepresentations, Plaintiff was damaged.

129. **(Aiding and Abetting Fraud):** Defendants Morgan, Cristaudo Holdings LLC, and John Does 1-10 aided and abetted AzulPay and Frank Cristaudo in their fraudulent representations to Plaintiff.

130. On information and belief, Defendants Morgan, Cristaudo Holdings LLC, and John Does 1-10 knew that AzulPay and Frank Cristaudo intended to make the above-described false representations to Plaintiff and other AzulPay Merchant Clients.

131. Defendants Morgan, Cristaudo Holdings LLC, and John Does 1-10 gave substantial assistance to Frank Cristaudo and AzulPay in perpetrating a scheme to defraud Plaintiff and other AzulPay Merchant Clients, including by falsely representing that AzulPay would provide credit/debit card processing services.

132. The conduct of Defendants Morgan, Cristaudo Holdings LLC, and John Does 1-10 was a substantial factor in causing harm to Plaintiff and a but-for and proximate cause of Plaintiff's injuries.

133. On information and belief, Defendants Morgan, Cristaudo Holdings LLC, and John Does 1-10 had the specific intent and consciously decided to facilitate the wrongful conduct of AzulPay and Frank Cristaudo, including their false representations to Plaintiff.

134. Even if Defendants Morgan, Cristaudo Holdings LLC, and John Does 1-10 did not have knowledge of AzulPay and Frank Cristaudo's wrongful conduct, they are separately responsible for and liable for the fraudulent inducement as aider and abettors because they gave AzulPay and Frank Cristaudo substantial assistance in achieving the tortious result

and their own conduct, separately considered, constitutes a breach of duty to Plaintiff.

135. **(Conspiracy to Commit Fraud):** On information and belief, each Defendant was part of a conspiracy to defraud Plaintiff and other AzulPay Merchant Clients.

136. On information and belief, the conspiracy was in existence at least as of April 2022 when AzulPay acquired the <azulpay.co> domain name. On information and belief, each Defendant had joined the conspiracy as of that date.

137. On information and belief, the conspiracy operated at a high level as follows: Defendant Frank Cristaudo organized and oversaw the scam. Frank Cristaudo enlisted Morgan to identify AzulPay as an inactive business entity that could be hijacked for the purpose of fraudulently advertising credit/debit card processing business. Frank Cristaudo enlisted Defendants AzulPay, Morgan, and John Does 1-5 to help operate AzulPay, including by falsely marketing AzulPay as a bona fide PSP for AzulPay's Merchant Clients. Frank Cristaudo enlisted Defendants Cristaudo Holdings LLC and John Does 6-10 to open merchant accounts with acquiring banks and to receive and pay out settled funds according to Cristaudo's scheme. When AzulPay had developed trust with its AzulPay Merchant Clients, Defendants stopped sending the settled funds to those AzulPay Merchant Clients, and Defendants retained the funds for themselves.

138. Defendants achieved the goal of the conspiracy of defrauding Plaintiff and stealing Plaintiff's funds.

139. Plaintiff was damaged as a result of the conspiratorial conduct of Defendants.

//

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

## FOURTH CLAIM FOR RELIEF

## (Conversion, Conspiracy to Commit Conversion, & Aiding and Abetting Conversion)

## (Against All Defendants)

140. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs.

141. Plaintiff owns and has the right to possess $1,127,899.91.

142. Plaintiff is entitled to immediate possession of these funds.

143. On information and belief, Defendants disposed of these funds in a manner inconsistent with Plaintiff's rights—i.e., Defendants stole the funds from Plaintiff.

144. On information and belief, Defendants intended to dispose of Plaintiff's funds in a manner inconsistent with Plaintiff's rights.

145. As a result of Defendants' conduct, Plaintiff has been damaged.

146. **(Aiding and Abetting Conversion):** Defendants aided and abetted one another in the conversion of Plaintiff's funds.

147. On information and belief, each Defendant intended to dispose of Plaintiff's funds in a manner inconsistent with Plaintiff's rights.

148. Each Defendant gave substantial assistance to the other Defendants in perpetrating the scheme to steal Plaintiff's funds.

149. Each Defendant's conduct was a substantial factor in causing harm to Plaintiff and a but-for and proximate cause of Plaintiff's injuries.

150. On information and belief, each Defendant had the specific intent and consciously decided to facilitate the theft of Plaintiff's funds.

151. Even if any Defendants did not have knowledge of the conversion of Plaintiff's funds, they are separately responsible for and liable for the conversion as aider and abettors because they gave the other Defendants substantial assistance in achieving the tortious result, and their

own conduct, separately considered, constitutes a breach of a duty to Plaintiff.

152. **(Conspiracy to Commit Conversion):** On information and belief, each Defendant was part of a conspiracy to steal the funds of Plaintiff and other AzulPay Merchant Clients.

153. On information and belief, the conspiracy was in existence at least as of April 2022 when AzulPay acquired the <azulpay.co> domain name. On information and belief, each Defendant had joined the conspiracy as of that date.

154. On information and belief, the conspiracy operated at a high level as follows: Defendant Frank Cristaudo organized and oversaw the scam. Frank Cristaudo enlisted Morgan to identify AzulPay as an inactive business entity that could be hijacked for the purpose of fraudulently advertising credit/debit card processing business. Frank Cristaudo enlisted Defendants AzulPay, Morgan, and John Does 1-5 to help operate AzulPay, including by falsely marketing AzulPay as a bona fide PSP for AzulPay's Merchant Clients. Frank Cristaudo enlisted Defendants Cristaudo Holdings LLC and John Does 6-10 to open merchant accounts with acquiring banks and to receive and pay out settled funds according to Cristaudo's scheme. When AzulPay had developed trust with its AzulPay Merchant Clients, Defendants stopped sending the settled funds to those AzulPay Merchant Clients, and Defendants retained the funds for themselves.

155. Defendants achieved the goal of the conspiracy of stealing Plaintiff's funds.

156. Plaintiff was damaged as a result of the conspiratorial conduct of Defendants in stealing Plaintiff's funds.

//

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

## FIFTH CLAIM FOR RELIEF

**(Breach of Contract)**

**(Against AzulPay)**

157. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs.

158. On July 7, 2022, Plaintiff entered into a written Contract with AzulPay.

159. Under the Contract, AzulPay agreed to process credit/debit card transactions for Plaintiff and to send Plaintiff the settled funds.

160. Plaintiff performed under the Contract.

161. AzulPay breached the Contract when it did not send settled funds to Plaintiff.

162. As a result of AzulPay's breaches, Plaintiff has been damaged, including the loss of the settled funds to which Plaintiff is entitled.

## SIXTH CLAIM FOR RELIEF

**(Intentional Interference with Contractual Relations, Aiding and Abetting Intentional Interference with Contractual Relations, & Conspiracy to Interfere with Contractual Relations)**

**(Against Defendants Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10)**

156. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs.

157. On July 7, 2022, Plaintiff entered into a written Contract with AzulPay.

158. On information and belief, Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 knew about the Contract.

159. On information and belief, Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 engaged in intentional acts

designed to induce a breach or disruption of the Contract.

160. Specifically, on information and belief, Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 engaged in conduct to lure Plaintiff into entering into the Contract and then to increase the volume of Plaintiff's credit/debit card transactions submitted to AzulPay. Defendants then stole Plaintiff's settled funds, causing AzulPay to breach the Contract.

161. As a result of the conduct of Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10, AzulPay breached its Contract with Plaintiff by not paying Plaintiff the settled funds.

162. As a result of AzulPay's breaches of the Contract, Plaintiff has been damaged, including the loss of the settled funds to which Plaintiff is entitled.

163. **(Aiding and Abetting Interference with Contractual Relations):** Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 aided and abetted each other in their scheme to cause AzulPay to breach the Contract by not paying settled funds to Plaintiff.

164. On information and belief, Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 intended to work with each other to steal money from Plaintiff and thereby cause AzulPay to breach the Contract.

165. Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 gave substantial assistance to each other in perpetrating the scheme to steal Plaintiff's funds and thereby cause AzulPay to breach the Contract.

166. The conduct of Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 was a substantial factor in causing harm to Plaintiff and a but-for and proximate cause of Plaintiff's injuries.



KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

167. On information and belief, Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 had the specific intent and consciously decided to steal Plaintiff's funds and thereby cause AzulPay to breach the Contract.

168. Even if Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 did not have knowledge of the other Defendants' wrongful conduct, they are separately responsible for and liable for the interference with the Contract as aider and abettors because they gave each other substantial assistance in achieving the tortious result and their own conduct, separately considered, constitutes a breach of duty to Plaintiff.

169. **(Conspiracy to Interfere with Contractual Relations):** On information and belief, Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 were part of a conspiracy to cause AzulPay to breach the Contract by not paying settled funds to Plaintiff.

170. On information and belief, the conspiracy was in existence at least as of April 2022 when AzulPay acquired the <azulpay.co> domain name. On information and belief, each Defendant had joined the conspiracy as of that date.

171. On information and belief, the conspiracy operated at a high level as follows: Defendant Frank Cristaudo organized and oversaw the scam. Frank Cristaudo enlisted Morgan to identify AzulPay as an inactive business entity that could be hijacked for the purpose of fraudulently advertising credit/debit card processing business. Frank Cristaudo enlisted Defendants AzulPay, Morgan, and John Does 1-5 to help operate AzulPay, including by falsely marketing AzulPay as a bona fide PSP for AzulPay's Merchant Clients. Frank Cristaudo enlisted Defendants Cristaudo Holdings LLC and John Does 6-10 to open merchant accounts with acquiring banks and to

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

receive and pay out settled funds according to Cristaudo's scheme. When AzulPay had developed trust with its AzulPay Merchant Clients, Defendants stopped sending the settled funds to those AzulPay Merchant Clients, and Defendants retained the funds for themselves.

172. Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10 achieved the goal of the conspiracy of causing AzulPay to breach the Contract by not paying settled funds to Plaintiff.

173. Plaintiff was damaged as a result of the conspiratorial conduct of Defendants Morgan, Frank Cristaudo, Cristaudo Holdings LLC, and John Does 1-10.

**SEVENTH CLAIM FOR RELIEF**

**(Violation of California Penal Code §496, Aiding and Abetting Violations of California Penal Code §496, & Conspiracy to Violate California Penal Code §496)**

**(Against All Defendants)**

174. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs.

175. On information and belief, Defendants received Plaintiff's stolen funds knowing the funds had been stolen in violation of California Penal Code §496.

176. As a result of Defendants' violation of California Penal Code §496, Plaintiff has been harmed.

177. **(Aiding and Abetting Violation of California Penal Code §496):** Defendants aided and abetted each other in their scheme to steal money from Plaintiff.

178. On information and belief, Defendants intended to work with each other to steal money from Plaintiff.

179. Defendants gave substantial assistance to each other in

perpetrating the scheme to steal Plaintiff's funds.

180. Defendants' conduct was a substantial factor in causing harm to Plaintiff and a but-for and proximate cause of Plaintiff's injuries.

181. On information and belief, Defendants had the specific intent and consciously decided to facilitate the theft of Plaintiff's funds.

182. Even if any Defendant did not have knowledge of the other Defendants' wrongful conduct, they are separately responsible for and liable for violations of California Penal Code §496 as aider and abettors because they gave the other Defendants substantial assistance in achieving the unlawful result, and their own conduct, separately considered, constitutes a breach of duty to Plaintiff.

183. **(Conspiracy to Violate California Penal Code §496):** Defendants were part of a conspiracy to defraud Plaintiff and other AzulPay Merchant Clients and to steal their money.

184. On information and belief, the conspiracy was in existence at least as of April 2022 when AzulPay acquired the <azulpay.co> domain name. On information and belief, each Defendant had joined the conspiracy as of that date.

185. On information and belief, the conspiracy operated at a high level as follows: Defendant Frank Cristaudo organized and oversaw the scam. Frank Cristaudo enlisted Morgan to identify AzulPay as an inactive business entity that could be hijacked for the purpose of fraudulently advertising credit/debit card processing business. Frank Cristaudo enlisted Defendants AzulPay, Morgan, and John Does 1-5 to help operate AzulPay, including by falsely marketing AzulPay as a bona fide PSP for AzulPay's Merchant Clients. Frank Cristaudo enlisted Defendants Cristaudo Holdings LLC and John Does 6-10 to open merchant accounts with acquiring banks and to receive and pay out settled funds according to Cristaudo's scheme. When

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

AzulPay had developed trust with its AzulPay Merchant Clients, Defendants stopped sending the settled funds to those AzulPay Merchant Clients, and Defendants retained the funds for themselves.

186. Defendants achieved the goal of the conspiracy of stealing Plaintiff's funds.

187. Plaintiff was damaged as a result of Defendants' conspiratorial conduct.

**EIGHTH CLAIM FOR RELIEF**

**(Money Had and Received)**

**(Against All Defendants)**

188. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs.

189. Defendants received Plaintiff's stolen funds knowing the funds had been stolen in violation of California Penal Code §496.

190. The money received by Defendants belonged to Plaintiff and was for Plaintiff's use.

191. As a result of Defendants' conduct, Defendants are indebted to Plaintiff in the amount of $1,127,899.91.

**NINTH CLAIM FOR RELIEF**

**(False Advertising Under the Lanham Act, 15 U.S.C. §1125(a))**

**(Against Defendant AzulPay and Frank Cristaudo)**

192. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs.

193. While Plaintiff was AzulPay's client, Plaintiff and AzulPay also competed with each other in providing credit/debit card processing solutions to merchants in high-risk industries.

194. Frank Cristaudo, acting as and through AzulPay, made false statements of fact in a commercial advertisement about AzulPay's

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

credit/debit card processing services. Specifically, Frank Cristaudo and AzulPay stated on the AzulPay Website that it provided legitimate credit/debit card processing services for its clients.

195. Frank Cristaudo and AzulPay's statements on the AzulPay Website were literally false in that AzulPay did not provide legitimate credit/debit card processing services. Rather, AzulPay was part of a conspiracy to defraud AzulPay's Merchant Clients and to steal their money.

196. Frank Cristaudo's and AzulPay's statements on the AzulPay Website actually deceived Plaintiff and other credit/debit card service providers, including but not limited to Zenium and PayAdmit.

197. Frank Cristaudo and AzulPay's statements on the AzulPay Website were material in that they were likely to influence merchants and merchant service providers into working with AzulPay.

198. Frank Cristaudo and AzulPay caused their false representations to enter into interstate commerce by publishing them on the internet and then contracting with AzulPay Merchant Clients throughout the world.

199. As a result of Frank Cristaudo and AzulPay's false advertisements, merchants operating in high-risk industries chose to work with AzulPay rather than Plaintiff as an entity that would connect merchants to PSPs.

200. As a result of Frank Cristaudo and AzulPay's false representations, Plaintiff was harmed.

**TENTH CLAIM FOR RELIEF**

**(Breach of Contract)**

**(Against Defendant Maxwell Dean Morgan)**

201. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs.

202. On March 7, 2023, Plaintiff entered into a written Payment

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Agreement with Morgan.

203. Under the Payment Agreement, Morgan was required to pay Plaintiff $1,127,889.91 in six installments between March 24, 2023 and May 31, 2023.

204. Morgan failed to make any payments under the Payment Agreement.

205. Plaintiff performed under the Contract.

206. Morgan's failures to make the required payments were material breaches of the Payment Agreement.

207. As a result of Morgan's breaches, Plaintiff has been damaged, including the loss of the funds to which Plaintiff is entitled.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Pan Digital Network Limited respectfully requests that the Court enter judgment in its favor and against all Defendants and award the following relief to Plaintiff and against Defendants:

1. An award of damages to Plaintiff and against Defendants in an amount to be proved at trial, comprising the following:

   a. Compensatory damages under California law, including California Civil Code §3281;

   b. Punitive damages pursuant to California Civil Code §3294;

   c. Restitution and/or other equitable relief, including without limitation disgorgement of all revenues, profits, and unjust enrichment that Defendants obtained from Plaintiff;

   d. For damages of three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c) and (d);

   e. Reasonable attorney's fees against Defendant Morgan pursuant to the Payment Agreement;

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

f. Plaintiff's costs of suit;

g. Pre-judgment interest to the extent allowed by law; and

2. An award of attorney's fees against Defendant Maxwell Dean Morgan pursuant to the Payment Agreement.

3. Such other and additional relief as the Court deems just and proper.

Respectfully Submitted,

DATED: November 22, 2023 **KRONENBERGER ROSENFELD, LLP**

By: s/ Karl S. Kronenberger
Karl S. Kronenberger

Attorneys for Plaintiff Pan Digital Network Limited

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**JURY TRIAL DEMANDED**

Plaintiff Pan Digital Network Limited Institute hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

DATED: November 22, 2023 **KRONENBERGER ROSENFELD, LLP**

By: s/ Karl S. Kronenberger
Karl S. Kronenberger

Attorneys for Plaintiff Pan Digital Network Limited

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108