**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
karl@kr.law
Jeffrey M. Rosenfeld (Bar No. 222187)
jeff@kr.law
Leah Rosa Vulić (Bar No. 343520)
leah@kr.law
548 Market Street, #85399
San Francisco, CA 94104
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

Attorneys for Plaintiff Pan Digital Network Limited

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

**PAN DIGITAL NETWORK LIMITED,** a United Kingdom limited company,

Plaintiff,

v.

**2069913 ONTARIO LIMITED,** an Ontario, Canada business corporation, and **MAXWELL DEAN MORGAN**, an individual,

Defendants.

Case No. 2:23-cv-00584-SPG-MAA

**SECOND AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff, Pan Digital Network Limited, by and through its undersigned counsel, alleges as follows.

## INTRODUCTION

1. Plaintiff Pan Digital Network Limited assists clients in finding credit/debit card processing solutions.

2. Many of Plaintiff's clients operate in high-risk industries in which it is often difficult to find credit/debit card processing solutions.

3. Plaintiff functions as an intermediary between its merchant clients and banks that have agreements with credit card issuers, and which are willing to work with merchants in high-risk industries.

4. Plaintiff connects its clients with payment service providers, which in turn have relationships with banks. Bona fide payment service providers are designated by banks to solicit credit/debit card processing customers and to assist those customers in transmitting credit/debit card transaction data to the banks.

5. In July 2022, Plaintiff entered into a written contract with payment service provider Defendant 2069913 Ontario Limited *dba* AzulPay ("AzulPay"). AzulPay agreed to provide credit/debit card processing services to Plaintiff.

6. Pursuant to the contract, Plaintiff submitted credit/debit card transactions to AzulPay, and AzulPay was supposed to submit those transactions to one or more banks. In turn, the banks were supposed to settle the credit card transactions and send the funds to AzulPay. AzulPay was then supposed to send the funds—less AzulPay's commission—to Plaintiff.

7. Unfortunately, AzulPay was part of a conspiracy to defraud Plaintiff and others and to steal their money.

8. After making some initial payments to Plaintiff and encouraging Plaintiff to send a greater volume of credit/debit card transactions to AzulPay,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

AzulPay stopped making payments to Plaintiff altogether while owing Plaintiff over a million dollars in settled credit/debit card transactions.

9. Shortly after AzulPay stopped making payments, AzulPay stopped responding to Plaintiff's communications, and its website disappeared.

10. Former Defendant Frank Cristaudo served as the hub of the conspiracy to defraud and to steal from Plaintiff. The remaining Defendants provided essential support for Cristaudo's scheme.

## JURISDICTION & VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. §1331 over Plaintiff's claim arising under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. §1367 because that claim is so related to Plaintiff's federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

12. This Court is a proper venue under 28 U.S.C. §1391 because a substantial part of the events that gave rise to Plaintiff's claims occurred in this judicial district.

13. On information and belief, this Court has personal jurisdiction over Defendant 2069913 Ontario Limited because its principal place of business is in California.

14. This Court also has personal jurisdiction over Maxwell Dean Morgan pursuant to the Payment Agreement dated March 7, 2023, and attached hereto as **Exhibit B (**the "Payment Agreement"), which provides:

> "This Agreement, in all respects, shall be interpreted, enforced, and governed by and under the laws of the State of California and the United States. The Parties agree that all disputes among them arising out of or related to this Agreement, including claims

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

of breach of this Agreement, shall be resolved exclusively by state or federal courts located in California, and the Parties waive any objection that they may have to the location of the court considering the dispute, including but not limited to objections on the grounds of subject matter jurisdiction or personal jurisdiction."

**PARTIES**

15. Plaintiff Pan Digital Network Limited is a United Kingdom limited company with its principal place of business in the United Kingdom.

16. On information and belief, Defendant 2069913 Ontario Limited *dba* AzulPay is an Ontario, Canada business corporation with its principal place of business in California.

17. On information and belief, Defendant Maxwell Dean Morgan is an individual residing in Ontario, Canada.

**FACTUAL ALLEGATIONS**

**A. Credit/Debit Card Processing and Plaintiff's Business**

18. The process of paying by a credit or debit card involves multiple steps and multiple actors.

19. First, the cardholder presents their credit/debit card to a merchant in exchange for goods or services. The presentment may occur at a credit card terminal in a brick-and-mortar store, on an e-commerce website, or in a mobile application.

20. Information regarding the proposed credit/debit card transaction is instantaneously communicated to the bank that issued the credit/debit card to the cardholder (i.e., the card-issuing bank). Once the card-issuing bank approves the transaction, the transaction data is recorded by the merchant.

21. For payment of a credit/debit card transaction (i.e., settlement),

the merchant sends the authorized transaction data to a bank that has a relationship with the credit/debit card associations, like Visa and Mastercard. This bank is often referred to as the "acquiring bank." Typically, the transaction data is sent to the acquiring bank in batches.

22. The acquiring bank sends the transaction data to the relevant card association (i.e., Visa transactions are separated out and sent to Visa). The card association then sends the transaction data to the relevant card-issuing bank. The card-issuing bank charges the cardholder's account for the amount of the transaction and transfers the funds to the acquiring bank, less interchange fees.

23. The acquiring bank then deposits the funds in the merchant's account less any fees.

24. Acquiring banks may contract with various types of service providers to assist in this process.

25. For example, a Merchant Service Provider ("MSP") or Independent Sales Organization ("ISO") (collectively, a "Payment Service Provider" or "PSP") is an entity that provides credit/debit card services to merchants based on an agreement between the PSP and an acquiring bank. A PSP's services may include merchant solicitation, point-of-transaction acceptance device installation and service, and transaction receipt data capture and transmission.

26. Under the card association rules, PSPs are prohibited from: a) contracting directly with the merchant without the acquiring bank as a party to the contract, b) accessing the merchant's funds, even when they provide technological assistance with the transfer of approved transactions, and c) subcontracting their responsibilities to other entities.

27. Plaintiff assists merchants that operate in high-risk industries with finding credit/debit card processing solutions.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

28. Specifically, Plaintiff assists its clients by connecting them with PSPs that have contracted with banks that are willing to accept credit/debit card transactions from merchants operating in high-risk industries.

29. In turn, the PSPs help form relationships between Plaintiff's clients and one or more acquiring banks.

30. In exchange, both the PSP and Plaintiff receive a commission paid by Plaintiff's clients.

**B. Defendants' Conspiracy**

31. On information and belief, Former Defendant Frank Cristaudo came up with a plan to defraud merchants and merchant service providers.

32. On information and belief, Frank Cristaudo was at the center of the scheme and engaged the other Defendants to help with different aspects of the scheme.

33. On information and belief, Frank Cristaudo has engaged in similar schemes on multiple occasions.

34. On information and belief, the other Defendants agreed to participate in Frank Cristaudo's scheme and helped carry it out.

35. On information and belief, Defendants' scheme works as follows.

36. First, on information and belief, Defendants find an inactive company (owned by a third party), which they can use as the face of a credit card processing business (the "Hijacked Business").

37. Second, on information and belief, Defendants develop a website for the Hijacked Business to create the appearance that the Hijacked Business is a legitimate PSP.

38. Third, on information and belief, Defendants gain the trust of merchants and merchant service providers by marketing the Hijacked Business as a legitimate PSP that can assist merchants in high-risk industries.

39. Fourth, on information and belief, Defendants have the Hijacked

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Business enter into written contracts with merchants and merchant service providers ("Merchant Clients"). The Hijacked Business agrees to provide the Merchant Clients with credit/debit card processing services. Defendants forge the signature of an actual principal of the Hijacked Business.

40. Fifth, on information and belief, Defendants initially assist in processing credit/debit card transactions for Merchant Clients and remit the settled funds to the Merchant Client. As Defendants gain the trust of a Merchant Client, they encourage the Merchant Client to increase the volume of transactions it sends to the Hijacked Business.

41. Sixth, on information and belief, Defendants stop remitting the settled funds to their Merchant Clients, and steal the settled funds for themselves.

42. Finally, on information and belief, Defendants abandon the Hijacked Business, leaving the original principals of the Hijacked Business linked to Defendants' misconduct.

**C. Defendants' Defrauding of Plaintiff and Theft of Plaintiff's Money**

43. Defendants engaged in the above-described scheme to steal Plaintiff's money.

44. On information and belief, Defendant Morgan worked with Frank Cristaudo to find an inactive company that could be used to perpetrate the scam.

45. On information and belief, Morgan identified AzulPay to serve as a Hijacked Business. AzulPay had been formed by an acquaintance of Morgan's years earlier, but had not operated for some time. AzulPay was never a registered PSP with Visa or Mastercard; such status would have required a vetting process and acquiring bank sponsorship.

46. On information and belief, without the knowledge or consent of the actual principals of AzulPay, Defendants created a fully-interactive

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

website for AzulPay. Specifically, on April 22, 2022, one or more Defendants registered the domain name <azulpay.co>. Shortly thereafter, one or more Defendants created a fully-interactive website located at <azulpay.co> (the "AzulPay Website"). Defendants used the AzulPay Website to market AzulPay to merchants and merchant service providers (collectively, "AzulPay's Merchant Clients").

47. On information and belief, Frank Cristaudo designed or oversaw the design of the AzulPay Website. On information and belief, Morgan and Does 1-5 assisted Cristaudo with the marketing of AzulPay.

48. On information and belief, Defendants agreed and planned to use the AzulPay Website to lure AzulPay's Merchant Clients into entering credit/debit card processing agreements with AzulPay.

49. On information and belief, Defendants agreed and planned to initially process transactions for AzulPay's Merchant Clients.

50. On information and belief, Defendants agreed and planned that once AzulPay had established the trust of AzulPay's Merchant Clients, Defendants would encourage AzulPay's Merchant Clients to increase their volume of credit/debit card transactions.

51. On or around June 26, 2022, Plaintiff contacted AzulPay based on the recommendation of another PSP (i.e., Payzentric).

52. In response, AzulPay, explained to Plaintiff that AzulPay was a PSP for multiple African banks, and that AzulPay could help process credit/debit card transactions for merchants in high-risk industries.

53. On information and belief, Frank Cristaudo was responsible for these communications, though he used pseudonyms to hide his identity.

54. On July 7, 2022, Plaintiff entered into a merchant processing agreement with AzulPay (the "Contract"). A copy of the Contract is attached hereto as **Exhibit A**.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

55. The Contract provides,

> "2069913 Ontario Inc. s [AzulPay] shall provide Credit Card processing capabilities to the Client as well as other agreed to services such as gateway services, chargeback management and any other services deemed necessary for the successful processing and operation of its online business."

56. Exhibit A to the Contract sets forth the "Settlement Schedule: T+7 Days."

57. On information and belief, Frank Cristaudo presented the Contract to Plaintiff with the intent to defraud Plaintiff and to steal Plaintiff's money according to the conspiracy described above.

58. On information and belief, Frank Cristaudo forged the signature of Christopher Fagon on the Contract on behalf of AzulPay. Chistopher Fagon was a principal of AzulPay and had no knowledge of Frank Cristaudo's use of AzulPay to market credit/debit card processing services.

59. Because AzulPay was not a registered PSP and had no relationship with an acquiring bank, on information and belief, Defendants opened merchant accounts in certain Former Defendants' names, namely Cristaudo Holdings LLC and John Does 6-10.

60. On information and belief, Former Defendant Frank Cristaudo worked with the other Defendants to open one or more merchant accounts with acquiring banks in the name of Cristaudo Holdings LLC.

61. On information and belief, Cristaudo Holdings LLC is not a merchant that accepts credit/debit card payments, and it is not a registered PSP.

62. On information and belief, Defendants submitted credit/debit card transactions from AzulPay's Merchant Clients to acquiring banks while falsely representing to the acquiring banks that the transactions were those of

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Cristaudo Holdings LLC and John Does 6-10 instead of those of AzulPay's Merchant Clients. Thus, when the acquiring banks paid out the settled funds, the banks paid the funds to Cristaudo Holdings LLC and John Does 6-10 (and not to AzulPay's Merchant Clients).

63. After signing the Contract and creating an account through the AzulPay Website, Plaintiff began submitting credit/debit card transactions to AzulPay for processing and settlement.

64. At first, Plaintiff received the funds for the settled transactions pursuant to the Contract, though sometimes with minor delays.

65. However, the settled funds were often transferred to Plaintiff either through untraceable cryptocurrency or from parties other than AzulPay.

66. As an example, on July 18, 2022, Former Defendant Cristaudo Holdings LLC transferred £19,373.24 to Plaintiff's client.

67. As another example, on August 3, 2022, Former Defendant Cristaudo Holdings LLC transferred £79,597.95 to Plaintiff's client.

68. As another example, on August 8, 2022, Former Defendant Cristaudo Holdings LLC transferred £31,512.32 to Plaintiff's client.

69. As another example, on August 10, 2022, Former Defendant Cristaudo Holdings LLC transferred £15,383.76 to Plaintiff's client.

70. There would have been no reason for Cristaudo Holdings LLC or Frank Cristaudo to transfer money to Plaintiff or Plaintiff's clients except in furtherance of their relationship with AzulPay and as part of a conspiracy to defraud and to steal from Plaintiff.

71. By early October 2022, the short delays in AzulPay's settlement become longer.

72. By late October 2022, Plaintiff stopped receiving payments from AzulPay (or other entities on behalf of AzulPay) altogether.

73. On November 7, 2022, Frank Cristaudo (on behalf of AzulPay)

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

sent a letter to Plaintiff, ostensibly from a "Taylor Givins," stating:

> "We wanted to take the time to explain the problems we've encountered with respect to the settlements that have not been paid out to you as yet.
>
> For your processing in September and October we had two banks in Africa that held the funds due to fines levied on their bank both from Visa and MasterCard. This is not necessarily reflective of your volume or MIDS but it's cumulative to the BIN that you were in. Unfortunately, African banks are notoriously slow in fixing these issues and so we have not received your funds as yet.
>
> The banks in question are GT Bank and Wema. We pledged to start trying to settle out of our own commissions last month and then we had funds held at FTX resulting in our inability to send funds to several of our merchants, agents and partners.
>
> Because of these obstacles, we've pledged to start settling you as of December 9th - December 13th. Starting with your most recent processing of approx $45K. The week of December 9th we will start looking at a schedule that makes sense and can be adhered to in order to settle remaining funds.
>
> Looking forward to working with you to settle in full and hopefully resume business in the near future."

74. This letter was false. GT Bank in Nigeria continued processing payments for Plaintiff through a different PSP during this same time period

and afterward.

75. On information and belief, Taylor Givins is a fictitious person, and no such person works for or represents AzulPay.

76. Plaintiff never received any further payments or communications from AzulPay.

77. When Plaintiff sought to contact AzulPay, it received no response.

78. By January 1, 2023, the AzulPay Website was gone.

79. In total, Defendants stole and failed to pay Plaintiff $1,127,899.91 in settled credit/debit card funds.

**D. Defendant Morgan's Payment Agreement**

80. After Plaintiff filed this suit, Plaintiff's counsel was directed to Defendant Morgan.

81. Morgan explained to Plaintiff's counsel that he was involved in the handling of Plaintiff's funds, and he blamed the failure to return the funds on difficulties with certain African banks.

82. On March 7, 2023, Plaintiff and Morgan executed a contract whereby Morgan agreed to re-pay the funds stolen from Plaintiff. A true and correct copy of the contract is attached hereto as **Exhibit B** (the Payment Agreement).

83. The Payment Agreement required Morgan to pay $1,127,889.91 to Plaintiff in six installments between March 24, 2023 and May 31, 2023.

84. Morgan failed to make any of the payments under the Payment Agreement.

85.

**FIRST CLAIM FOR RELIEF**

**(False Advertising Under the Lanham Act, 15 U.S.C. §1125(a))**

**(Against Defendant AzulPay)**

86. Plaintiff repeats and incorporates by reference the allegations

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

contained in the preceding paragraphs.

87. While Plaintiff was AzulPay's client, Plaintiff and AzulPay also competed with each other in providing credit/debit card processing solutions to merchants in high-risk industries.

88. Frank Cristaudo, acting as and through AzulPay, made false statements of fact in a commercial advertisement about AzulPay's credit/debit card processing services. Specifically, Frank Cristaudo and AzulPay stated on the AzulPay Website that it provided legitimate credit/debit card processing services for its clients.

89. Frank Cristaudo and AzulPay's statements on the AzulPay Website were literally false in that AzulPay did not provide legitimate credit/debit card processing services. Rather, AzulPay was part of a conspiracy to defraud AzulPay's Merchant Clients and to steal their money.

90. Frank Cristaudo's and AzulPay's statements on the AzulPay Website actually deceived Plaintiff and other credit/debit card service providers, including but not limited to Zenium and PayAdmit.

91. Frank Cristaudo and AzulPay's statements on the AzulPay Website were material in that they were likely to influence merchants and merchant service providers into working with AzulPay.

92. Frank Cristaudo and AzulPay caused their false representations to enter into interstate commerce by publishing them on the internet and then contracting with AzulPay Merchant Clients throughout the world.

93. As a result of Frank Cristaudo and AzulPay's false advertisements, merchants operating in high-risk industries chose to work with AzulPay rather than Plaintiff as an entity that would connect merchants to PSPs.

94. As a result of Frank Cristaudo and AzulPay's false representations, Plaintiff was harmed.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

## SECOND CLAIM FOR RELIEF
## (Breach of Contract)
## (Against Defendant Maxwell Dean Morgan)

95. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs.

96. On March 7, 2023, Plaintiff entered into a written Payment Agreement with Morgan.

97. Under the Payment Agreement, Morgan was required to pay Plaintiff $1,127,889.91 in six installments between March 24, 2023 and May 31, 2023.

98. Morgan failed to make any payments under the Payment Agreement.

99. Plaintiff performed under the Contract.

100. Morgan's failures to make the required payments were material breaches of the Payment Agreement.

101. As a result of Morgan's breaches, Plaintiff has been damaged, including the loss of the funds to which Plaintiff is entitled.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Pan Digital Network Limited respectfully requests that the Court enter judgment in its favor and against all Defendants and award the following relief to Plaintiff and against Defendants:

1. An award of damages to Plaintiff and against Defendants in an amount to be proved at trial, comprising the following:

   a. Compensatory damages under California law, including California Civil Code §3281;

   b. Restitution and/or other equitable relief, including without limitation disgorgement of all revenues, profits, and unjust enrichment that Defendants obtained from Plaintiff;

c. Reasonable attorney's fees against Defendant Morgan pursuant to the Payment Agreement;

d. Plaintiff's costs of suit;

e. Pre-judgment interest to the extent allowed by law; and

2. Such other and additional relief as the Court deems just and proper.

Respectfully Submitted,

DATED: July 16, 2024

**KRONENBERGER ROSENFELD, LLP**

By: s/ Karl S. Kronenberger
Karl S. Kronenberger

Attorneys for Plaintiff Pan Digital Network Limited

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**JURY TRIAL DEMANDED**

Plaintiff Pan Digital Network Limited Institute hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

DATED: July 16, 2024

**KRONENBERGER ROSENFELD, LLP**

By: s/ Karl S. Kronenberger
Karl S. Kronenberger

Attorneys for Plaintiff Pan Digital Network Limited

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108