**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAN DIGITAL NETWORK LIMITED, a United Kingdom limited company,<br>Plaintiff,<br>v.<br>2069913 ONTARIO LIMITED, d/b/a AzulPay, an Ontario, Canada business corporation; and MAXWELL DEAN MORGAN, an individual,<br>Defendants. | Case No. 2:23-cv-00584-SPG-MAA<br>**ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT [ECF NO. 95]** |

Before the Court is the Renewed Motion for Default Judgment (ECF No. 95 ("Renewed Motion")) filed by Plaintiff Pan Digital Network Limited ("Plaintiff") against Defendants 2069913 Ontario Limited d/b/a AzulPay ("Defendant AzulPay") and Maxwell Dean Morgan ("Defendant Morgan") (collectively "Defendants"). Defendants did not oppose the Renewed Motion and have not otherwise appeared in this action. The Court has read and considered the matters raised with respect to the Renewed Motion and concluded that this matter is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered Plaintiff's submissions, the relevant law,

and the record in this case, the Court DENIES Plaintiff's Renewed Motion and DISMISSES the action without prejudice.

# I. BACKGROUND

## A. Factual Background

The Court has discussed at length the underlying factual allegations of this action. *See generally* (ECF Nos. 32 ("August 2023 Order") and 78 ("July 2024 Order")). As relevant to this Motion, the Court granted Plaintiff leave to amend its complaint, *see* (July 2024 Order), and Plaintiff thereafter filed the operative Second Amended Complaint, *see* (ECF No. 80 ("SAC")). In its SAC, Plaintiff alleges the following facts.

Defendant AzulPay is a Canadian corporation that provides payment services. (*Id.* ¶ 16). In July 2022, Plaintiff and Defendant AzulPay entered into a written contract, *see* (ECF No. 80-1, Ex. A ("Contract")), in which Defendant AzulPay agreed to provide credit and debit card processing services to Plaintiff. (SAC ¶ 5). Pursuant to the Contract, Plaintiff submitted credit and debit card transactions to Defendant AzulPay, which in turn, was expected to submit those transactions to banks. (*Id.* ¶ 6). Plaintiff expected the banks to subsequently "settle the credit card transactions and send the funds" to Defendant AzulPay, and Defendant AzulPay thereafter was expected to return such funds—minus its earned commission—to Plaintiff. (*Id.*).

According to Plaintiff, however, Defendant AzulPay engaged in "a conspiracy to defraud Plaintiff and others . . . to steal their money." (*Id.* ¶ 7). Indeed, Defendant AzulPay, Plaintiff maintains, provided the initial payments, but then ceased making payments and communicating with Plaintiff altogether. (*Id.* ¶¶ 8–9).

As part of this scheme, Defendant Morgan, a resident of Canada, (*id.* ¶ 17), allegedly worked "to find an inactive company that could be used to perpetrate the scam," (*id.* ¶ 44). Defendant Morgan identified AzulPay "to serve as a Hijacked Business" and carry out this scheme by assisting with "the marketing of AzulPay" as a legitimate payment services business. (*Id.* ¶¶ 45, 47). Additionally, on March 7, 2023, Plaintiff executed a written contract with Defendant Morgan, who agreed to re-pay Plaintiff for its stolen funds. (*Id.* ¶

82); *see also* (ECF No. 80-2, Ex. B ("The Payment Agreement")). The Payment Agreement stated, in pertinent part, that its interpretation and enforcement shall be "resolved exclusively by state or federal courts located in California," while Plaintiff and Defendant Morgan thereby "waive any objection . . . on the grounds of subject matter jurisdiction or personal jurisdiction." (*Id.* at 4). To date of the SAC's filing, Defendant Morgan has allegedly failed to render any of the obligated payments. (SAC ¶ 84).

Based on the foregoing factual allegations, Plaintiff asserts a federal claim against Defendant AzulPay for false advertising under the Lanham Act, *see* 15 U.S.C. § 1125(a). (SAC ¶¶ 86–94). Plaintiff also asserts, pursuant to supplemental jurisdiction, a state law breach of contract claim against Defendant Morgan. (*Id.* ¶¶ 11, 95–101).

### B. Procedural History

Plaintiff filed this action on January 25, 2023. (ECF No. 1). On June 30, 2023, Plaintiff filed self-executing voluntary dismissals of its claims without prejudice against Defendants Azul Pay, Christopher Fagon, and Andrew Burrows-Trotman. *See* (ECF Nos. 27–29); *see also* Fed. R. Civ. P. 41(a)(1)(A)(i). Thereafter, Plaintiff filed a First Amended Complaint against Defendants AzulPay, Morgan, Frank Cristaudo, and Cristaudo Holdings LLC. *See* (ECF No. 34). Plaintiff then filed another self-executing voluntary dismissal of its claims against Defendants Cristaudo and Cristaudo Holdings LLC. *See* (ECF No. 69). On July 10, 2024, the Court granted Plaintiff's unopposed motion for leave to file a Second Amended Complaint, *see* (ECF No. 78), and Plaintiff then filed on July 16, 2024, its operative Second Amended Complaint against Defendant AzulPay and Defendant Morgan. *See generally* (SAC). Defendants did not respond to the Complaint.

On August 7, 2024, pursuant to Plaintiff's request, the Clerk entered default against Defendants. (ECF Nos. 88–89). On August 14, 2024, Plaintiff filed its first Motion for Default Judgment against Defendants. (ECF No. 90 ("First Motion")). The Court denied the First Motion without prejudice because, upon the Court's affirmative duty to review its personal jurisdiction over Defendants, the facts provided did not support the exercise of personal jurisdiction over Defendant AzulPay. (ECF No. 94 ("Order")). The Court granted

Plaintiff leave to file a renewed motion, and affidavits setting forth specific facts, supporting the Court's exercise of personal jurisdiction over Defendant AzulPay. (*Id.*). This Renewed Motion followed. (ECF No. 95).

**II. LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b) permits the Court to order default judgment following the entry of default by the Clerk of Court. Fed. R. Civ. P. 55(b). After the Clerk enters default, well-pleaded allegations in the complaint are generally accepted as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Allegations as to damages, however, must be proven. *Id.* To determine damages, a court may rely on declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). Additionally, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Before a court can enter a default judgment against a defendant, the plaintiff must comply with the procedural requirements set forth in Federal Rules 54(d) and 55, as well as those in Local Rule 55-1. Local Rule 55-1 requires the party moving for default judgment to submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the defaulting party was properly served with notice, if required under Federal Rule 55(b)(2). C.D. Cal. L.R. 55-1.

If these procedural requirements are satisfied, a district court may, in its discretion, enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default, however, "does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Instead, the court, in its discretion, considers several factors, colloquially known as the "*Eitel* factors." *Id.* These factors "include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute

concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III. DISCUSSION

The Court must first determine whether it has personal jurisdiction over the parties and subject matter jurisdiction over the claims. Because the Complaint only asserts the Court has supplemental jurisdiction over the state law claim against Defendant Morgan, the Court first addresses whether it has personal and subject matter jurisdiction against Defendant AzulPay. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the Complaint brings a Lanham Act claim under 15 U.S.C. § 1125(a) against Defendant AzulPay. For personal jurisdiction, Plaintiff alleges that, "[o]n information and belief, this court has personal jurisdiction" over Defendant AzulPay, a corporation organized under the laws of Canada, "because its principal place of business is in California." (SAC ¶ 13).

Traditionally, a defendant either asserts or waives any challenges to a court's exercise of personal jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("In most circumstances, a defect in personal jurisdiction is a defense that may be asserted or waived by a party."). Nevertheless, "[w]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Id.* This oaffirmative duty exists because a "judgment entered without personal jurisdiction over the parties is void." *Id.* Therefore, the Ninth Circuit has instructed: "To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *Id.*; *see also Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515, 1522 (9th Cir. 1983) (affirming district court's denial of entry of default judgment where it lacked personal jurisdiction over defendants). With this legal precedent in mind, the Court begins with an examination of its jurisdiction.

### A. General Personal Jurisdiction over Defendant AzulPay

The Due Process Clause "require[s] that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two kinds of personal jurisdiction: general jurisdiction, where a Defendant may be haled into Court "to answer for any of its activities anywhere in the world," *Schwarzennegger v. Fred Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); or (ii) specific jurisdiction, where a Defendant may be haled into Court for "a suit arising out of or relating to the defendant's contacts with the forum." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 n.8 (1984). A court may exercise general personal jurisdiction over a corporation "when [its] affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Daimler AG v. Baumann*, 571 U.S. 117, 127 (2014). A corporation is considered "at home" in both its "place of incorporation and principal place of business." *Daimler*, 571 U.S. at 137. A "[C]ourt[] must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether [it] ha[s] jurisdiction." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987); *see also Delphix Corp. v. Embarcadero Techs.*, 749 Fed. App'x 502, 505 (9th Cir. 2018).

A plaintiff bears the burden of establishing that a district court has personal jurisdiction over a defendant. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128–29 (9th Cir. 2003); *see also Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) ("[T]he plaintiff bears the burden of establishing that jurisdiction exists."). To satisfy its "prima facie showing of jurisdiction" at the default judgment stage, a plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1129

(internal quotation marks and citation omitted) (quoting *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995)). Nevertheless, "[i]n evaluating whether a prima facie case is pled, only well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *High Tech Pet Prods., Inc. v. Juxin Pet Prod. Co.*, 2013 WL 1281619, at *4 (E.D. Cal. Mar. 27, 2013) (internal quotation marks omitted).

Plaintiff contends the Court has personal general jurisdiction over Defendant AzulPay because "AzulPay *had* its principal place of business in California." (ECF No. 95-1 at 15) (emphasis added). In particular, Plaintiff presents facts that "from 2011 through the end of its formal existence in 2018, AzulPay's principal executive office was in Los Angeles, California" and asserts that "[b]ecause AzulPay's principal executive office was in California during AzulPay's active history, this court has general personal jurisdiction over AzulPay." (*Id.* at 16).

The facts presented by Plaintiff, however, do not establish that this Court has general personal jurisdiction over Defendant AzulPay. First, the SAC most plausibly establishes Canada as AzulPay's principal place of business. The SAC attaches as an accompanying exhibit a copy of the alleged written contract between Plaintiff and Defendant AzulPay. *See* (SAC ¶¶ 54–56); *see also* (Contract). The Contract, in turn, states that the agreement is "between 2069913 Ontario Inc. O/A Azulpay *with its offices* at 100 King St W, Suite 5700, Toronto, ON . . . and Pan Digital Network, Limited with its offices located at 13 Maddox St, London W1S 2QG, UK . . . ." (Contract at 2) (emphasis added). Plaintiff argues that Defendant AzulPay's Ontario address is a "virtual or flexible office space," with the insinuation being that the Ontario address could not be Plaintiff's principal place of business. (ECF No. 95-1 at 16). But it does not follow that a California address would be Defendant AzulPay's principal place of business if Ontario is not. Regardless, a copy of the Ontario Business Registry Profile Report provided by Plaintiff establishes that the Ontario address listed on the Contract is, in fact, Defendant AzulPay's current, principal place of business. *See* (ECF No. 95-2 ("Kronenberger Decl.") ¶ 31, Ex. D ("Profile

Report") at 16 (as of March 3, 2025, listing 5700 – 100 King St W, Toronto, Ontario as the "Registered or Head Office Address" and the status listed as "active")).

Second, Plaintiff's proffered evidence of Defendant AzulPay's principal place of business supports that Defendant AzulPay abandoned California as its principal place of business long before this suit was filed or any of the conduct at-issue took place. Plaintiff provides a copy of Defendant AzulPay's Statement and Designation by Foreign Corporation, filed with the California Secretary of State on December 23, 2011, that shows that in 2011, Defendant AzulPay named its "principal executive office" is in Los Angeles, California. (*Id.* ¶¶ 23–25, Ex. B ("Statement & Designation") at 11). On August 10, 2017, Defendant AzulPay made its last filing with the California Secretary of State, where it again identified California as its "principal executive office." (*Id.* ¶¶ 26–28, Ex. C ("Statement of Information") at 14). On December 3, 2018, the California Secretary of State filed a notice that Defendant AzulPay had forfeited its registration due to failure to meet tax requirements with the Franchise Tax Board. (ECF *Id.* ¶ 29). The Complaint alleges Defendant AzulPay's offending conduct started at some point in 2022. (SAC ¶¶ 46 (Defendants created a website on April 22, 2022, for AzulPay), 51 (Plaintiff contacted AzulPay on June 26, 2022), 54 (Plaintiff and Defendant entered into the Contract on July 7, 2022), 66–73 (money transfers and delays occurring July 2022 to October 2022)). Thus, by the time the conduct alleged in the Complaint occurred, California was no longer AzulPay's principal place of business. *See Steel*, 813 F.2d at 1549 ("[T]he fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred.").

Third, although not argued by Plaintiff, these facts do not establish the Court has specific personal jurisdiction over AzulPay. The fact that AzulPay's license to operate in California was forfeited in 2018 for failure to meet tax requirements and was not subsequently renewed indicates that AzulPay was not active in California at the time of the underlying conduct in this case. *See* (Kronenberger Decl. ¶ 29). In fact, when AzulPay similarly received a delinquency notice in Canada for failing to pay taxes, it later resolved

that delinquency, indicating that, at least compared to Ontario, Canada, AzulPay has no "domicile with intent to remain" in California.[1] *See* (PRofile Report).

Plaintiff cites to *China Basin Properties, Ltd. v. One Pass, Inc.*, 812 F. Supp. 1038, 1040 (N.D. Cal. 1993) to argue that, "[i]n the context of analyzing diversity citizenship, courts in this circuit have found that when a corporation has ceased its business activity, it is a citizen of both its state of incorporation and of its last principal place of business." (ECF No. 95-1 at 16). But, as Plaintiff points out, *China Basin* decided the question of principal place of business in the context of diversity citizenship, not in the context of personal jurisdiction.[2] For diversity jurisdiction, the Court must decide whether a statutory requirement is met. *See* 28 U.S.C. § 1331. But, for personal jurisdiction, Plaintiff must meet the constitutional requirement that the exercise of the Court's jurisdiction accords with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 226 U.S. at 326. Haling Defendant AzulPay to court in California, over conduct that has no demonstrated connection to the state, where AzulPay has not had a principal place of business in California since at least 2018, does not comport with "traditional notions of fair play and substantial justice." *Id.* The record reflects that Defendant AzulPay's contacts with California have not been "continuous" or "systematic" since at least 2017. *See Daimler*, 571 U.S. at 127. Accordingly, Plaintiff has not carried its burden to demonstrate that this Court has personal jurisdiction over Defendant AzulPay.

**B. Dismissal is Appropriate**

"[W]hen a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." *In Re Tuli*, 172 F.3d at 712. In its

---

[1] Nor does Plaintiff make any argument that Defendant AzulPay's contacts with the United States as a whole render it subject to the Court's jurisdiction.

[2] *China Basin* is also distinguishable on the facts. In *China Basin*, the Plaintiff brought a breach of a lease contract agreement against Defendant, related to a lease held by Defendant in California for a property that was Plaintiff's principal place of business, until a fire substantially destroyed the premises, and Defendant reorganized its business in Wisconsin. 812 F. Supp. at 1038. Here, there are no pleaded facts to suggest that any of the at-issue conduct occurred in or around California.

prior Order on the First Motion, the Court provided Plaintiff "an opportunity to assert facts" that show this Court has personal jurisdiction over the Defendant against which it is bringing a federal claim. *Id.* at 713; (Order at 8 ("Plaintiff may file a renewed motion that is supported by an affidavit that sets for the facts, if any, that demonstrate this court has personal jurisdiction over Defendant AzulPay.")). In its Renewed Motion, Plaintiff's additional assertions of fact do not support that the exercise of personal jurisdiction over Defendant AzulPay is proper. Accordingly, the Court's power under supplemental jurisdiction to adjudicate the state law claim against Defendant Morgan also fails, given that it has no personal jurisdiction over Defendant AzulPay.[3] *See Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001) ("Without the hook of . . . original jurisdiction [] the district court ha[s] no power under either § 1367 or Article III of the Constitution to adjudicate any claims in the lawsuit."). The Court thus finds that dismissal of the action is appropriate.

//

//

//

//

//

---

[3] The Court declines to address whether it has diversity jurisdiction over the state law claim against Defendant Morgan because neither the SAC nor the Motion assert diversity jurisdiction as a basis for the Court's authority to adjudicate the breach of contract claim against Defendant Morgan. *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613–14 (9th Cir. 2016) ("The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction."); *see also Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 208 (2d Cir. 2024) ("[I]f no party invokes a theory of subject-matter jurisdiction, the district court is not obligated to consider it or to search for jurisdiction *sua sponte*.").

## IV. CONCLUSION

Plaintiff's Motion is DENIED. This action is DISMISSED in its entirety and without prejudice. The Clerk is directed to close this case.

**IT IS SO ORDERED.**

DATED: July 1, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE